FLEMING, Administrator of Wage and Hour Division, United States Dep't of Labor, v. ENTERPRISE BOX CO.

No. 277.

District Court, S. D. Florida, Tampa Division.

Feb. 26, 1941.

. See, also, D.C., 36 F.Supp. 606.

Bruce Aitchison, of Washington, D.C., and George A. Downing, Atlanta, Ga., for plaintiff.

Caraballo, Graham & Caraballo, of Tampa, Fla., for defendant.

WALLER, District Judge.

Plaintiff seeks to enjoin defendant from violating the provisions of Section 15(a)(1), 15(a)(2), and 15(a)(5) of the Fair Labor Standards Act of 1938 (Act of June 25, 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq. The complaint alleges that the defendant is engaged in manufacturing wooden cigar boxes, including the printing and labeling of said boxes, in the City of Tampa, Florida; that cigar boxes are produced from raw materials purchased and transported in interstate commerce from states other than the State of Florida, and that substantially all the goods produced by said employees in said plant have been and are being produced for interstate commerce and have been and are being sold, transported, shipped, and delivered in interstate commerce from said plant in the State of Florida through and to states other than the State of Florida. The plaintiff, before final hearing, made appropriate admissions that there was no evidence to show direct shipments by the defendant of its products to parties beyond the boundaries of the State of Florida. The complaint further alleged:

(1) That the defendant, since the effective date of the Fair Labor Standards Act, had failed to pay to many employees the minimum wage required by the Act.

(2) That the defendant worked employees for periods longer than the number of hours permitted by the Act without paying said employees time and a half for over time.

(3) That the defendant failed to keep records prescribed by the regulations of the Administrator of the Wage and Hour Division of the United States Department of Labor.

(4) That the defendant had falsified its records in material respects relative to the number of hours worked by its employees.

Motion by defendant to dismiss the complaint was overruled.

At the beginning of taking of testimony at final hearing the defendant made the following admissions in open Court, to wit:

1. That it has had, and still has, in its employ apprentices who were, and are, paid less than the amount provided by the Fair Labor Standard Act of 1938 and, further, that permits for employing said apprentices were not secured.

2. That the defendant has not paid overtime to the employees of the defendant who worked more than the maximum amount of hours fixed by said Act, but that all of said employees were paid straight time for said overtime.

3. That Jose Coromina, an employee of the defendant, is being paid 25¢ an hour for his work.

4. That helpers occasionally employed for short periods of time during last fall, after October 24, 1940, were paid 25¢ per hour.

5. That these admissions are made for the purpose of admitting true facts as well as shortening this trial but that they are not to be construed as admitting that the defendant is engaged in interstate commerce or in producing goods for interstate commerce within the meaning of said Act, but that it contends that it is engaged in purely intrastate manufacture and commerce and that its operations do not come within the purview of said Act.

Upon the filing of the foregoing admissions by the defendant the Court thereupon ruled that the only issues left for determination were:

(1) Whether the defendant was under the provisions of the Fair Labor Standards Act.

(2) Whether or not it had falsified its records relative to the matter of wages and hours of its employees.

At the conclusion of the testimony by the plaintiff the defendant moved the Court to dismiss the said cause and to deny the injunction sought, upon which motion the Court reserved its ruling on the question of whether or not the defendant was subject to the provisions of said Act and held that all other grounds of said motion were without merit. Thereupon, the defendant announced that it would offer no testimony but would submit the case on the testimony produced by the plaintiff.

### Findings of Fact.

The Court finds:

1. That the defendant failed to pay to some of its employees the minimum wages required by Section 6 of said Act.

2. That the defendant failed to pay wages at the rate of time and a half for over time worked by some of its employees.

3. That the defendant failed to keep records as required by the Administrator.

4. That the defendant did not keep correct records of the hours worked by many of its employees but that it failsified its said records in that numerous pieceworkers were required to compute their total weekly earnings, divide said total earnings by thirty cents an hour and to record the result as the hours worked during a given week rather than to record the actual number of hours worked.

The evidence fails to show any sales or shipments by the defendant of its products to parties outside the State of Florida. All of its sales were made to cigar factories located in the City of Tampa in the State of Florida. There is, therefore, no proof of any direct sales or shipments by the defendant in interstate commerce.

The proof showed without dispute that labels were placed by the defendant on many of the cigar boxes manufactured by it, which labels were, as a rule, furnished by the cigar manufacturer. The proof also showed that labels bearing such inscriptions as "Engineers Club of New York", "The Yale Club of New York", "Princeton Club Special—Princeton Club of New York", were furnished by one cigar factory to the defendant and such labels were placed on the cigar boxes by the defendant in the process of the manufacture of same. It was also testified that the defendant manufactured cigar boxes with the "back strips" on the cigar boxes having printed thereon the name of one distributor in New York and another distributor in California. These labels were introduced by the plaintiff for the purpose of showing that they were the special brand of these particular clubs whose domicile was shown on the labels to be in New York, and that the cigars were manufactured on special order for these particular clubs, and that the defendant, in making the boxes and placing the labels thereon, knew that the boxes were to be transported in interstate commerce. The president of the defendant insisted that these labels were nothing more than trade marks for particular brands of cigars. The Court does not recall that the defendant made any explanation of the printing, on the back strips of certain cigar boxes manufactured by it, the name of the distributor or distributors appearing thereon.

The proof further shows that the cigar-making industry is a large and important industry in the City of Tampa, Florida, and that in excess of ninety-five per cent of all the cigars produced in Tampa are sold outside of the State of Florida. The regulations of the Treasury Department of the United States require that all cigars be sold in a box or container, which box or container cannot be refilled or re-used. It is necessary, therefore, in the sale of cigars, whether intrastate or interstate, that they be packed in boxes or containers. Such boxes, which might be either of wood,

tin, paper, or some composition, are, therefore, essential to the sale and shipment of cigars whether sold in intrastate commerce or interstate commerce.

From the foregoing findings of fact, all of which are admitted or proven without dispute, it must necessarily follow that the injunction sought must be granted if the defendant was, indeed, in production of goods for interstate commerce, or if the defendant was making sales of goods with knowledge that same were intended for shipment, delivery, or sale in interstate commerce, under the provisions of the said Fair Labor Standards Act.

### Legal Conclusions.

The perplexing legal question presented in this case is whether or not the employees of a defendant who makes no shipment nor sale of its products across state lines, but sells its entire production locally, are engaged in "interstate commerce" or whether they are engaged in "the production of goods for commerce" so as to bring such employer and employees under the provisions of the Fair Labor Standards Act.

No reported case has been submitted to the Court which is directly decisive of the foregoing question. All of the cases cited to the Court construing the Act dealt with direct shipments in interstate commerce by the employer, or dealt with sales to parties outside of the state of commodities to be transported in interstate commerce. Here we have local sales only, with no proof or implication that the method used was a subterfuge or a method designed to evade the provisions of the Act.

It is contended by counsel for the defendant that the Act would be unconstitutional if applied to the defendant in the circumstances of this case in that Congress has no power to regulate purely intrastate transactions such as it is contended this case presents.

The Court does not entertain the view that the defendant is directly engaged in interstate commerce, but the Act provides, or undertakes to provide, that it shall be applicable to all employers and employees engaged "in the production of goods for commerce" Sec. 6(a), Sec. 7(a). Section 15(a) of the Act also makes it unlawful for any person to "sell with knowledge that shipment or delivery or sale thereof in commerce is intended, any goods in the production of which any employee was employed in violation of Sections 6 or 7 [section 206 or section 207], * * *". If the defendant is within the provisions of the Act it is because it and its employees have been engaged in "the production of goods for commerce" or because it sold its products "with knowledge that shipment or delivery or sale thereof in commerce" was intended. Sec. 15(a)(1).

If the defendant sold goods produced by it with knowledge that the shipment, delivery, or sale thereof was intended by the purchaser, it seems inescapable that the defendant was within the provisions of the Act, provided such provisions in the Act were not in contravention of the Federal Constitution.

The sales of the goods produced by the defendant are admitted by the defendant, but it denies that the sales were with knowledge that shipment, delivery, or sale of such products in commerce was intended. It is claimed by the defendant that it did not know what disposition the purchaser would make of the cigar boxes; that it was not interested in what it did with them or where the boxes were sold or shipped; that it was no concern of the defendant; that it made a local sale to a local purchaser, and there its connection with the transaction ended.

It will be necessary to examine the facts and the evidence to determine whether or not the defendant, through its president, had knowledge of what the purchaser of its products intended to do with same. The president of the defendant was for a number of years engaged in making cigars as an employee of a cigar factory and for many years had been the president and active head of the defendant in the manufacture and sale of cigar boxes in Tampa. For some thirty years he had been engaged in one or the other of the above occupations. He, therefore, is presumed to have had more than a general knowledge of the cigar and cigar-box businesses. He must have known that the cigar industry in Tampa for a great many years has been one of the prime industries of Tampa, and that many millions of cigars are manufactured annually in Tampa and sold throughout the greater part of the United States. He must have known that only a small portion of the output of cigars made in Tampa were consumed, or could have been consumed, in the State of Florida. The evidence shows that he manufactured boxes with labels of clubs domi-

ciled in other states and other boxes with the names and domiciles of distributors in cities in other states. The inspector for the Wage and Hour Division testified that many months before the bringing of suit he advised the president of the defendant that practically all of the cigar boxes manufactured and sold by the defendant were shipped in interstate commerce to purchasers residing outside of the State of Florida. It seems safe to say that one is charged with knowing that which he should have known. It also seems reasonable to conclude that the Act in question cast upon the manufacturer the duty of making some inquiry in order that he might know whether or not he is conducting his business under the law. One could hardly escape a duty imposed upon him by law merely by saying "I did not know and I made no effort to find out the facts." Be that as it may, and without deciding the point, the Court is led to conclude from the evidence that the defendant knew when it sold the goods so produced that the same were intended to be shipped, delivered, or sold in interstate commerce. What a third party knows or intends must usually · be ascertained from all the facts and circumstances surrounding the individual, and from all the facts and circumstances of this case the Court must conclude that the defendant had knowledge that the major portion of the cigar boxes produced and sold by it were intended by the purchasers to be shipped or delivered in interstate commerce.

This leads us now to consider whether or not the pertinent portions of the Fair Labor Standards Act would be unconstitutional if held applicable in the present case. The Act, of course, is constitutional if Congress had the power to legislate on the subject. It has never been disputed that Congress has the power to regulate interstate commerce. A purely local sale within the state, where made with no intent or purpose involved for interstate delivery or sale, ordinarily is not within the realm of Congressional power, but I am not prepared to assert that Congress did not intend, under the present Act, to declare that a sale, made with knowledge that the purchaser intends to transport, deliver, or sell it outside the State, is interstate commerce. Neither am I ready to assert that Congress was without power to so define interstate commerce. I am inclined to the view that it is not strictly interstate com-

merce, but such a conclusion does not foreclose the question of whether or not Congress had any power to regulate purely local transactions that it found injuriously affected interstate commerce or the free flow of goods in interstate commerce. It has been frequently held by the Supreme Court of the United States that if Congress deems certain practices, though not really part of interstate commerce, likely to obstruct, restrain, or burden it, it has the power to subject them to national supervision and restraint. United Mine Workers v. Coronado Coal Company, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762; Santa Cruz Fruit Packing Company v. National Labor Relations Board, 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954; National Labor Relations Board v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014; United States v. F. W. Darby Company, 61 S.Ct. 451, 85 L.Ed. ——.

Congress, in the enactment of the Fair Labor Standards Act made a finding and declaration of policy:

"Sec. 2 [§ 202]. (a) The Congress hereby finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce.

"(b) It is hereby declared to be the policy of this Act [chapter], through the exercise by Congress of its power to regulate commerce among the several States, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power."

Thus it is that even though the transactions here involved, when isolated, were purely intrastate transactions, yet Congress has found that sub-standard wage conditions interfere with the free flow of interstate commerce, and under the decisions

336

above referred to Congress has the power to legislate in regard thereto. If it has the power to regulate such transactions then it had the power to prescribe, as it did, that it shall be unlawful for one to sell "with knowledge that shipment or delivery or sale thereof in interstate commerce is intended" where the goods so sold were produced without observation of the minimum wage and maximum hour requirements of the Act in question. It is not the province of the Court to pass upon the wisdom or the policy of legislation.

I reach the conclusion, therefore, that under the decisions of the Supreme Court of the United States above cited Congress had the power to enact the provisions in question, and that from the evidence the defendant is under the provisions of the Act in question.

It follows, therefore, that the injunction prayed for should issue. Let an appropriate order be prepared and submitted.