WALLING, Adm'r, Wage and Hour Division, U. S. Dept. of Labor, v. WABASH RADIO CORPORATION.

Civil Action No. 513.

District Court, W. D. Michigan, S. D.
March 21, 1946.

Charles A. Reynard, Regional Atty. U. S. Department of Labor, Wage and Hour and Public Contracts Division, of Cleveland, Ohio, for plaintiff.

Uhl, Bryant, Snow & Slawson, of Grand Rapids, Mich., and J. A. McClain, Jr., J. H. Miller, and R. B. Elster, all of St. Louis, Mo., for defendant.

PICARD, District Judge.

From the stipulated facts in this case it appears that on June 9, 1930, the Ann Arbor Railroad Company, which owned and operated what is now defendant's radio station, was denied a renewal of its license by the Federal Radio Commission (now Federal Communications Commission) on the ground "that public interest, convenience, or necessity would not be served by granting said application."

Defendant, Wabash Radio Corporation, was then created as a wholly owned subsidiary of the railroad, and by agreement with the parent corporation, June 13, 1930, undertook to secure the necessary radio license for location at Frankfort, Michigan. Since receiving the same it has maintained and operated the radio-telegraph facilities such as handling messages for the general public 24 hours a day, and transmitting and

receiving messages between shore points and ships on Lake Michigan. An unsegregated portion of these messages move in interstate commerce.

Following incorporation of defendant the same persons who had worked for the railroad in its radio-telegraph division at Frankfort, Michigan, continued to operate defendant's facilities, and in 1934 they moved from a separate building three or four blocks away right into the railroad and carferry terminal at Frankfort.

There are three operators involved here, one on the day shift, who works almost exclusively in the performance of radio-telegraphic duties, and one on each the second and third shifts who work in a dual capacity. They operate the radio-telegraph facilities, and at the same time handle land wire messages for the railroad.

Prior to April 1943 the day shift radio operator and his substitutes were carried on the railroad time roll sheet under designation "Wabash Radio Corporation," but from then on they were placed directly on the railroad payroll. However, all of the day shift operator's pay, and fifty per cent of the wages paid the second and third shift operators are always charged back as "an advance" to the defendant.

The Ann Arbor Railroad is a common carrier by rail and water, subject to Part I of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., and is admittedly an employer within the meaning of Section 13(b) (2) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 213(b) (2). Defendant as a carrier of intelligence by air regularly submits all reports required by the Federal Communications Commission through its radio operator at Frankfort, but first to the auditor of the Ann Arbor Railroad. While working for defendant, the radio operators report to and are under the charge and direction of the railroad company.

The original agreement between defendant and the railroad company (June 13, 1930) outlining their intercorporate relations was amended March 24, 1943, to include an admission that since its creation defendant had been operated by employees of the railroad who were carried on the railroad payroll, and treated in all respects as other railroad employees. This statement and amendment was made after plaintiff started inspecting the books of defendant company to determine the extent of its compliance with provisions of the Fair Labor Standards Act.

As further indicia of their railroad assimilation the record shows that the three radio-telegraph operators have a specified amount deducted monthly from their pay under provisions of the Carriers Taxing Act of 1937, 45 U.S.C.A. § 261 et seq.; are granted privileges and remunerations under the Railroad Retirement Act of 1937, 45 U.S.C.A. § 228a et seq.; and receive free transportation over railroads. The day radio operator is represented by the Order of Railroad Telegraphers, and the second and third trick combination Morse-radio operators are carried on the transportation department operator's seniority list of the Ann Arbor Railroad Company. They draw pay according to the railroad telegraphers' scale, and in all respects are treated as railroad employees.

Less than two per cent of the total messages handled by the radio operators come from the general public, the others are for the railroad.

From October 1938 to the date of the commencement of this suit the radio-telegraph operators worked in excess of forty hours per week but received no overtime pay for time worked over forty hours. Since March 1, 1945, by agreement between the men and the company, they have been compensated at time and a half for employment over forty-eight hours.

This action is brought for overtime compensation in accordance with Section 7 of the Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060, 29 U.S.C. § 201 et seq., 29 U.S.C.A. § 201 et seq.

Conclusions of Law.

The briefs both narrow and increase the scope of inquiry. It is narrowed in that while defendant initially claimed that these radio operators were employees of the railroad company alone, its reply brief admits that they are employees of both the Ann Arbor Railroad and defendant.

On the other hand, the briefs increase the scope of inquiry because defendant now urges that the exemption provisions of Section 13(b) (2) of the Act become applicable. This exemption was not previously pleaded in the answer, and under Rule 8(c), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, could not be considered. Schmidtke v. Conesa, 1 Cir., 141 F.2d 634. The court however granted defendant's motion to amend its answer and, deciding this issue forthwith, holds that defendant's position is without merit. Defendant is not and surely can't claim to be an employer subject to the Interstate Commerce Act. It is not a common carrier and under the decision of North Shore Corporation v. Barnett et al., 5 Cir., 143 F.2d 172, a case practically on all fours with the case at bar on that point, this defendant could not avail itself of an exemption conferred by statute merely because at odd intervals its employees may engage in duties of a nature which might fall within the scope of the exemption. The percentage rule of exempt or nonexempt work does not apply in these cases, and the burden of proof required to be sustained by those claiming the exemption is not met. Fletcher et al. v. Grinnell Bros., 6 Cir., 150 F.2d 337.

Passing to the main question we find it agreed that these employees are engaged in work within the general coverage of the Fair Labor Standards Act and that they are not compensated in accordance with its requirements. But—and this is important—if they are employees of the railroad company alone then they admittedly are exempt from the Act's coverage because Section 13(b) reads in part as follows:

"The provisions of section 7 (Sec. 207 of this title, Maximum Hours) shall not apply with respect to (1) * * *; or (2) *any employee of an employer* subject to the provisions of Part I of the Interstate Commerce Act." (Italics ours.)

On the other hand, if they are employees of defendant alone, then it is equally clear and admitted that they are entitled to the benefits of the Fair Labor Standards Act.

Since it is well established by the great weight of authority that the traditional tests of employee relationship at common law are not applicable in interpreting rights of an employee in the light of the history, terms and purposes of such legislation as the Fair Labor Standards Act, National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170; Fleming v. Demeritt Co., D.C., 56 F.Supp. 376; Walling v. Merchants Police Service, D.C., 59 F.Supp. 873, and since it is also well established that a man might have two different employers, Mid-Continent Pipe Line Co. et al. v. Hargrave, 10 Cir., 129 F.2d 655; National Labor Relations Board v. Long Lake Lumber Co. et al., 9 Cir., 138 F.2d 363; Greenberg v. Arsenal Bldg. Corporation, et al., 2 Cir., 144 F.2d 292; Walling v. Merchants Police Service, D.C., 59 F.Supp. 873; Utah Copper Co. v. Railroad Retirement Board, 10 Cir., 129 F.2d 358; North Shore Corporation v. Barnett, supra; The Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480, what then is the effect on a worker's status when he has two joint employers, one who comes under the act and the other exempt from its provisions?

Defendant contends that because the railroad is the chief employer of these men and furnishes defendant almost 99 per cent of its business, leaving less than 2 per cent emanating from the general public, the benefit of the exception or exemption belongs to the railroad and controls the status of its employees.

But analyzing this claim we find that there are certain salient points that defendant entirely ignores in its argument, beginning with the fact that the Federal Communications Commission in the "public interest" took away from the railroad company the right to send out communications by air. As a result the railroad company formed this separate corporation and then successfully, and we believe legally, masqueraded as the Wabash Radio Corporation, using its own employees to carry on the work of the radio corporation. Nevertheless there are still two separate entities recognized by law. The radio cor-

poration couldn't run the railroad, and the railroad can't run the radio corporation. It may control it, legally, but the rights and the powers of the radio corporation are distinct from the general powers and rights of the railroad.

It is also true that while messages sent by the radio corporation have their genesis practically 99 per cent from the railroad and less than 2 per cent from the general public, the moment those messages are transmitted by the radio corporation they are sent as public messages. This being so the percentage of messages sent by the public jumps from 1 per cent to 100 per cent. This is a radio station for the public and does not change its garb because of its customers.

The fact also remains that employees of the radio station are available to the public every minute of the day, and you can't separate the moments in which they will be occupied with the railroad company's interests and the time they devote to the radio work. It has been held that "Readiness to serve may be hired, quite as much as service itself, and time spent in lying in wait for * * * (active employment) * * * may be treated by the parties as a benefit to the employer." Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 168, 89 L.Ed. 118; Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124. Such an employee comes under the act.

 Not to recognize the complete separation of entities directed to come into exintence by the Federal Communications Commission's refusal to grant the railroad company's petition in 1930 would be to fail to recognize any merit to the reason given by that Commission in refusing to grant said petition originally. It would make such order simply a paper transaction because in what other way could defendant carry on its functions except through individuals? Should the court lend its aid to circumvention? Certainly not. What arrangements two corporations may make as to payment of their respective employees or the work to be performed by those employees is one thing, but as long as the employee "is engaged in commerce or in the production of goods for commerce," Section 6(a), for an employer subject to the Act, Section 3(d), then it is immaterial what type of work is being performed for the other employer who may be exempt from its provisions. Such employee is entitled to all the benefits of the Fair Labor Standards Act. Princeton Mining Co. et al. v. Veach, D.C.[1] Walling v. Merchants Police Service, supra; North Shore Corporation v. Barnett, supra; Armour & Co. v. Wantock, supra; Skidmore v. Swift & Co., supra.

 Nor can defendant receive aid from Interpretative Bulletin No. 15 issued by the Administrator. These employers are not "acting entirely independently of each other with respect to the employment" and the "arrangement for the interchange of employees." This is a joint employment.

It is interesting to note also that the Supreme Court of the United States has, we believe, added to the authorities in its recent decision of Boutell et al. v. Walling, 66 S.Ct. 631, affirming our own court of appeals (6 Cir., 148 F.2d 329). The case is not cited in any of the briefs presented to this court chiefly, we believe, because the issues discussed related to whether the employees were engaged in work that rendered the employer exempt. Nevertheless, as in the case at bar, the "parent" ownership feature is present and the attitude of the court is consistent with the well recognized view. In the Boutell case the owners of the partnership (F. J. Boutell Service Company) are the sole stockholders of the F. J. Boutell Drive-Away Company. The Service employees work exclusively for the Drive-Away Company, which is exempt from the Fair Labor Standards Act because of Section 13(b) (1). The court held that the Service Company came under the Fair Labor Standards Act and even though the Drive-Away Company was its only customer, the exemption did not extend to the employer of the workmen, the Service Company.

For the reasons given an order in conformity with this opinion may be submitted to this court for its signature.

---

[1] No opinion for publication.