Martin P. DURKIN, Secretary of Labor, United States Department of Labor,

v.

M. E. WALDRON, d/b/a Waldron Oil Company, and Waldron Oil Corporation, a corporation.

Civ. A. No. 3759.

United States District Court,
W. D. Louisiana, Alexandria Division.

March 31, 1955.

William B. Tyson, Earl Street, Harry Campbell, Jr., Dallas, Tex., for plaintiff.

Malcolm E. Lafargue, Shreveport, La., for defendants.

HUNTER, District Judge.

The proceeding here is brought by the Secretary of Labor in his official capacity under Section 16(c) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. to recover wages due three named employees (J. C. Porter, E. H. Kinney, and C. W. Gorman), in accordance with their written requests.

The facts may be summarized as follows:

Defendant Waldron, during the period material hereto (June 3, 1950 to March 3, 1951) was engaged in the production of oil from wells owned and operated by him in the so-called Tullos Oil Field. The corporate defendant was engaged in producing oil from wells owned by others (not involved here) under a "farmout" contract. In addition, a certain amount of clean-out, or maintenance work, was performed by the corporation for operators of other wells in the area.

The corporate defendant was organized in 1934. One hundred shares of stock were authorized. Of the fifty shares actually issued, Waldron owned forty-eight. The remaining two were issued, one to his lawyer, and the other to a friend, with nothing being paid therefor, and both were endorsed in blank and delivered to Waldron. He had sole control over the corporate activities. A single superintendent, his son-in-law, looks after both his properties and the corporate activities. A single crew, of which the employees here were members, did all of the work, both for Waldron and his corporation. They performed all necessary work on Waldron's wells, and those operated by his corporation as necessity required. Waldron had sole authority (generally exercised through his superintendent) over the crew's activities, wages and hours. When the employees were employed it was the intention of Waldron to require them to work on any wells needing servicing, regardless of whether they were his personal property, or the property of the corporation. The corporation had no assets other than its farm-out contracts. The equipment used by the corporation Waldron regarded as his own. Time was kept for the employees by the superintendent and carried in a single pay roll ledger, and was charged in part to the corporation, and part to Waldron. No evidence was offered as to the accuracy of the division, except that the time

within a particular day was never divided. For example, although four days might be charged to Waldron and two to the corporation, there are no instances where, within a single day, some hours were charged to Waldron and the remainder to his corporation, although it was evident that such instances occurred.

The oil produced was sold at the well head to the Placid Oil Company. (Defendants had no connection whatsoever with the oil after it was delivered to the Placid Oil Company.) It was co-mingled with similar grades of oil obtained from others and was sold and delivered by Placid to the Magnolia Petroleum Company at Lake Charles, Louisiana, which shipped it in interstate commerce. Mr. Waldron had been in the oil business for many years, and although he had no control over the oil after he sold it, and no personal knowledge of its disposition, he knew that Louisiana was a major oil producing state, and that large quantities of the oil produced left the state, either as crude or refined products. There is no question but that Waldron knew when he sold the goods so produced that the same was intended to be shipped, delivered, or eventually sold in interstate commerce.

Suit on their behalf was requested by the three employees, all oil field workers. In their request, they intended to ask the plaintiff to recover the wages due them from their employer, Waldron Oil Company of Tullos, Louisiana, for hours worked by them in excess of forty hours per week.

Various defenses have been interposed by defendants. In the interest of convenience and clarity, we shall deal with these defenses separately.

### Applicability of the Act

This defense is based on the assumption that because the oil produced by defendants was sold at the well head to Placid, which company was not engaged in interstate commerce, and because defendants had no connection whatsoever with the oil after it was delivered to said company, that therefore defendants were not engaged in "interstate commerce" or in the "production of goods for commerce" so as to bring such employer and employees under the provisions of the Act.

This defense lacks validity in the light of the facts here and of the uniform jurisprudence. It is without question that the work of pumpers and roustabouts and other maintenance employees in obtaining oil from the ground constitutes "production" under Section 3(j) of the Act, 29 U.S.C.A. § 203(j), which reads as follows:

" 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State."

It is equally clear that such production is production for interstate commerce. The fact that the oil goes out of the employer's control and is thereafter shipped in commerce by the purchaser either as crude oil or as a refined product has no bearing on the applicability of the Act to the producer's employees. It was pointed out in United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609, the Act applies to employees producing goods where the employer intends or expects that according to the normal course of his business all or some part will be selected for shipment to out-of-state customers.

In Warren-Bradshaw Drilling Co. v. Hall, 5 Cir., 124 F.2d 42, the applicability of the Act to employees drilling a well was the issue under consideration. The employer did not even actually drill into the producing horizon, but only near thereto when the well was to be completed by another contractor and by oth·

er drilling techniques. The employer was only a contractor with no interest in the lease or in the oil, if any, which would be produced. The record reflected that oil that was produced from the well after completion was sold at the well to pipelines, some being with petroleum companies operating on a national scale, where it was commingled, as here, with oil produced by others. It was further proven that some of these pipelines shipped crude oil out of the state and that a large percentage of the crude sold to refineries within the state was thereafter shipped to extra-state destinations as refined petroleum products.

The Court of Appeals, without discussion, concluded the proof was abundant that the oil was intended to move and did move in interstate commerce.

The Supreme Court, 317 U.S. 88, 63 S.Ct. 125, 127, 87 L.Ed. 83, affirmed. The Darby case was cited and reaffirmed. The Court said:

"The Act extends at least to the employer who expects goods to move in interstate commerce. * * * Assuming that such expectation, or a reasonable basis therefor, was necessary on petitioner's part before the application of the Act to petitioner, it is here present. The record contains ample indication that there were reasonable grounds for petitioner to anticipate, at the time of drilling, that oil produced by the wells drilled, would move into other states. Petitioner, closely identified as it is with the business of oil production, cannot escape the impact of the Act by a transparent claim of ignorance of the interstate character of the Texas oil industry. St. John v. Brown, D.C., 38 F.Supp. 385, 388; cf. Fleming v. Enterprise Box Co., D.C., 37 F.Supp. 331, 334, 335, affirmed 5 Cir., 125 F.2d 897."

To the same effect is D. A. Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 931, 90 L.Ed. 1114, where the Court said, in response to the contention the employee did not know what the actual owners of the goods processed intended to do with them:

"* * * we think the conclusion of the Circuit Court of Appeals that these tenants had reasonable grounds to anticipate that material quantities of their production would move interstate is well supported. It is not essential that individual products should be traced [as has been done in the case at bar]. It is sufficient that, from the circumstances of production, a trier of fact may reasonably infer that a producer has grounds to anticipate that his products will move interstate. * * * Producers may be held to know the usual routes for distribution of their products."

See also Atlantic Co. v. Walling, 5 Cir., 131 F.2d 518; Casa Baldrich, Inc. v. Mitchell, 1 Cir., 214 F.2d 703; Tobin v. Celery City Printing Co., 5 Cir., 197 F.2d 228; Culver v. Bell & Loffland, Inc., 9 Cir., 146 F.2d 29.

The employees here are much closer to the actual production than the drilling crew in Warren-Bradshaw. Similarly, the actual movement of defendants' oil in interstate commerce was clearly shown, as was Waldron's knowledge that large quantities of Louisiana oil was shipped in interstate commerce. The rule stated by the Supreme Court is entirely apropos and the employees here were engaged in the production of oil for interstate commerce.

### Sufficiency of the Request to Sue

■■ Defendant vigorously contends that the written requests here were insufficient to permit the suit against both Waldron and his corporation. We see no such infirmity. The Secretary is authorized to recover back wages for an employee only upon the written request of the employee. However, the statute, 29 U.S.C.A. § 216(c), does not provide the form of the request or the manner of filing. The requests here were prepared by the employees without assistance from the Department of Labor[1]. It is

---

1. See Appendix (1).

my opinion that the requests clearly indicate that the employees desired the assistance of the Secretary in recovering the wages due them. There is a paucity of cases bearing on the question. The only decision that has been cited is Tobin v. Laredo Manufacturing Co., D.C. S.D.Tex., 130 F.Supp. 732. There, Judge Allred said:

> "If [the Fair Labor Standards Act] is a remedial statute, entitled to a liberal, not a narrow or technical construction. The letter is addressed to the regional attorney "U. S. Dept. of Labor." It identifies the signers as 'workers for the Laredo Manufacturing Co.' and requests that 'you file suit against Nitichin,' defendant's general manager, 'for minimum wages and overtime compensation due us and [or] the Fair Labor Standards Act of 1938'. * * * I hold that the letter was in substantial compliance with the statute * * *."

The request is sufficient against both Waldron (Waldron Oil Company), and against his corporation (Waldron Oil Corporation). But even if the request was good only against Waldron, and not against the Waldron Oil Corporation, the suit would not fail. Judgment would go against Waldron for the full amount. He would be relegated to his right of contribution from the corporation.

### Was the Employment Joint or Separate?

■■ Next comes the contention that Waldron and his corporation were separate and distinct entities and that each acted separately from the other in respect to the employment of these three men. The effect of this argument would be to make it possible for the same employer, in two different capacities, to engage the same employees without having to combine the total hours worked for each. There can be no question, we think, that if the employees were jointly employed by Waldron and the corporation that all hours worked by each must be taken into account to determine over-time due them. We hold (on facts heretofore set forth) that the employees were jointly employed. There is an impressive body of cases, the rationale of which supports this position, and we believe they state the correct rule. The principal decisions are summarized:

North Shore Corporation v. Barnett, 5 Cir., 143 F.2d 172:

Action was brought under Section 16 (b) by employees employed in connection with the repair and maintenance of a toll road and bridges owned by the defendant corporation and engaged in the repair and maintenance of a telephone line and operation of such telephone line owned by a wholly subsidiary of the defendant, Bay Shore Water and Light Company. It appears from the District Court decision, Scott v. North Shore Corp., 52 F.Supp. 503, that all of the employees were carried on the payrolls of North Shore Corporation, but that each spent a greater or lesser period of time working upon the properties of the Bay Shore Water and Light Company. Without discussing the joint employment question the Court rendered judgment covering compensation for all hours worked, whether upon the toll road and bridges or upon the telephone lines. Upon appeal the judgment was affirmed.

Mid-Continent Pipe Line Co. v. Hargrave, 10 Cir., 129 F.2d 655, 658:

Action was brought under Section 16(b) of the Act by certain guards and watchmen engaged in protecting the properties of the Mid-Continent Petroleum Corporation, and the Mid-Continent Pipe Line Company during the progress of a strike. Although the Court does not discuss the connection between the two companies, it may be noted that they are closely associated. In passing upon the contention that hours worked for both concerns should not be considered in determining the amounts due, the Court of Appeals said:

> "The court found in substance that the two companies were acting jointly when any of the claimants were said to have been employed for a time by one of the companies dur-

ing the period in question and for a time by the other. The companies acted separately in issuing checks in payment of the wages of the claimants. But there was testimony that both companies employed a single person to hire the watchmen, that he worked for both in employing them, that they were employed to guard the properties of both, that they worked part of the time under the employ of one and part under the employ of the other, and that sometimes they worked for both at the same time. The evidence and the fair inferences to be drawn from it support the finding. It therefore must stand on appeal. Rule of Civil Procedure 52(a), 28 U.S.C.A. following section 723c. And certainly if the two companies acted jointly in the premises a joint judgment against them was warranted."

Greenberg v. Arsenal Building Corp., D.C.S.D.N.Y., 50 F.Supp. 700:

Suit was instituted by certain employees against the Arsenal Building Corporation, the owner of a loft building, and Separ and Company, Inc., which was engaged in operating the building for its owner. The Court held that both concerns were employers under the Act and that they were jointly liable for underpayments of wages. See in this connection also Fleming v. Arsenal Building Corp., 2 Cir., 125 F.2d 278.

The Greenberg case was affirmed in all respects by the Second Circuit at 144 F.2d 292 and by the Supreme Court at 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296, except with reference to the allowance of interest. Slover v. Wathen, 4 Cir., 140 F.2d 258.

This case was brought under Section 16(b) of the Act against two co-partners, Wathen and Company and Patapsco Drydock Company. The owners of both companies were identical. They used a common office and pier to conduct their business and the employees worked interchangeably for both firms. Wathen was engaged in the operation of barges carrying goods by water in interstate commerce and Patapsco was engaged in the repair and maintenance of barges, 90 per cent of its work being for Wathen. The Court held that Wathen and Patapsco were one and the same for all practical purposes.

Walling v. Wabash Radio Corp., D.C. Michigan, 65 F.Supp. 969.

The Ann Arbor Railroad Company, prior to June 1930, owned and operated a radio station at Frankfort, Michigan. When denied renewal of its license by the F. C. C. it organized a wholly owned subsidiary, Wabash Radio Corporation, which thereafter owned and operated the station. The three operators of the station were carried on the payroll records of the railroad and paid by the railroad, the railroad charging against the radio corporation all of the day shift operators' pay and 50 per cent of the wages of the remaining two operators. The greater part of the work (in the neighborhood of 98 per cent) of the messages transmitted and received by the station were for the railroad. The District Court held that the operators were jointly employed by the railroad and the radio corporation.

In Wabash Radio Corp. v. Walling, 6 Cir., 162 F.2d 391, the judgment of the District Court was affirmed, the Court pointing out the joint employment, without discussing the propriety of the holding.

McComb v. Midwest Rust Proof Co., D.C.E.D.Mo., 16 Labor Cases 64, 953.

Action was brought under Section 17 of the Act, against Midwest Rust Proof Company, a corporation, and Howard G. Skinker and John R. Skinker, co-partners, d/b/a S. & S. Metal Finishing Company. The defendants asserted that each was operating an entirely separate and distinct business and that the employees working for each would be entitled to overtime compensation only where they worked in excess of 40 hours for only one. Midwest operated a rust-proofing and cleaning business and S. & S. an enameling business. Howard Skinker was president and treasurer of

Midwest and directed its operations. J. R. Skinker supervised directly the painting and enameling business. Howard Skinker determined the management policies of both businesses but consulted with his partner. Both businesses had a common or joint general manager who directed the work of all employees whether cleaning and rustproofing or enameling. The common general manager hired and fired all employees and fixed their hours of work and rates of pay, solicited business and issued quotations to prospective customers, his salary being divided by the Midwest and S. & S. Of some 30 to 35 employees, ten or fifteen have interchanged their work between the enameling process and the cleaning and rustproofing processes. Some were paid for their work jointly by both defendants, others paid separately by each defendant. A single establishment was occupied with a joint clerical office and cleaning and rustproofing being carried on on one floor and enameling upon another. The Court said:

"In this case we believe the operations of the two businesses are so closely connected and interwoven in a joint manner, and to an extent jointly owned, that any allocations of hours of work between the two defendants can only be an estimate. The operations while distinct in themselves yet bear a relation to one another in instances where a product not only is cleaned and rust proofed but is subjected to a painting process as well.

"We conclude under the provisions of the Fair Labor Standards Act the relationship between defendants and their employees was that of employee and employer, and the employment of workmen in the plants of the defendants should be treated as joint, or a whole, as long as the plants are operated substantially as shown by the record in this case, and the defendants should be held responsible for the payment of overtime jointly, and for hours worked in one workweek, whether in one operation or both operations of the two defendants. Records should be kept in compliance with the provisions of the Act."

Mitchell v. Thompson Materials & Const. Co., D.C.Cal., (11–12–54) 27 Labor Cases 68,888.

Suit brought against corporation and Geo. L. Thompson. Thompson owned 97½ per cent of stock in corporate defendant and was partner in three partnerships. Claimant was employed as a welder and performed duties at corporation's establishment, but worked indiscriminately and interchangeably at the defendant's request in repairing and maintaining the equipment of the corporation and the partnerships in the employment and supervision of claimant. Held claimant was jointly employed and all hours worked for all were to be totaled in determining overtime due. Separate books and records were kept by each entity.

Mitchell v. Bowman, D.C.Ala., 131 F. Supp. 520:

Employee concerned worked four or five days at defendant's stockyard and one day at another stockyard in another town operated by a partnership composed of defendant and another. Held the employee was jointly employed by defendant and the partnership.

### Estoppel

Defendants advance the proposition that the Secretary of Labor is estopped to obtain recovery for J. C. Porter because of a letter signed by him on April 2, 1951, long prior to his request to sue[2].

It is clear that nothing an employee may do (except to permit the running of the statute of limitations) can defeat his rights under the act, either by waiver, release or estoppel. The court said, in Brooklyn Savings Bank v. O'-Neil, 324 U.S. 697, 65 S.Ct. 895, 900, 89

2. See Appendix (2).

L.Ed. 1296, in a case involving the Fair Labor Standards Act:

"It has been held in this and other courts that a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy. Midstate Horticultural Co. v. Penn. Ry. Co., 320 U.S. 356, 361, 64 S.Ct. 128, 130, 88 L.Ed. 96; A. J. Phillips Co. v. Grand Trunk W. R. Co., 236 U.S. 662, 667, 35 S.Ct. 444, 446, 59 L.Ed. 774; Cf. Young v. Higbee, 324 U.S. 204, 65 S.Ct. 594 [89 L.Ed. 890]. Where a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate.

\*   \*   \*   \*   \*   \*

"No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act."

See also in this connection: Atlantic Company v. Broughton, 5 Cir., 146 F.2d 480; Gatliff Coal Co. v. Cox, 6 Cir., 152 F.2d 52; Geo. Lawley & Son Corp. v. South, 1 Cir., 140 F.2d 439, 151 A.L.R. 1081; De Pasquale v. Williams-Bauer Corp., 2 Cir., 151 F.2d 578.

In any event, there has been no showing by defendants of any consideration for the letter, sufficient to sustain it as a waiver by contract nor any reliance and change of position therein which is required to sustain a plea of estoppel. At its date Porter's rights, whatever they may have been, were fully accrued and the defendants could not have relied in any way in his employment on the statements in the letter.

Plaintiffs have attached to their brief as an appendix a transcription of payroll ledger (Exhibit J–1) for each of the three employees. The Court attaches hereto an appendix of its own setting forth its computations [3]. Those hours or days charged to the corporation are underlined. Porter's monthly salary of $300 per month is evenly divided between defendants. Each paid, as to Gorman and Kinney, the rates shown for the number of hours charged to him, or it. Counsel for defendants interprets the payroll ledger (Exhibit J–1) as reflecting that Porter, during some weeks, actually received more money than the government says he was due. But, it is admitted and the testimony was uncontradicted, that Porter was paid $300 per month, and under the decision in the Overnight Motor Co. case, that salary had to be prorated to the work weeks by multiplying it by 12 and dividing the total by 52, which resulted in a weekly salary of $69.23. This, in turn, was divided by the number of hours actually worked, and the employee is entitled to one-half of that sum for each overtime hour. For forty-eight hours, Porter was therefore entitled to a gross pay of $74.99. Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682.

With reference to E. H. Kinney and C. W. Gorman, the payroll records are not consistent as to just when wages were paid, or just what the pay period was. Nevertheless, the records reflect positively that the wages of Kinney and Gorman consisted of the total number of hours worked, multiplied by their hourly rate of $1 or $1.10. In computing the back wages of Kinney and Gorman, the hours worked by them in excess of 40 in any week were multiplied by one-half the hourly rate applicable. In accordance with the computations attached, it is the judgment of this court that M. E. Waldron, d/b/a Waldron Oil Company, and Waldron Oil Corporation, are jointly liable to the employees as follows:

| J. C. Porter | $225.54 |
| E. H. Kinney | 163.08 |
| C. W. Gorman | 206.68 |

A decree in accordance herewith will be signed upon presentation.

3. See Appendix (3).

**510**

## Appendix (1)

### Letters of Request
### Written by Employees

"Urania, La.
"Box 475
"April 10, 1952

"Wage & Hour & Public Contracts Div.
"U. S. Department of Labor
"Basement Medical Arts Bldg.—
    624 Travis St.
"Shreveport, Louisiana

"Dear Sirs:

"I'm writing asking you to collect, my back time wages due me, from the Waldron Oil Co. of Tullos, La.

"You also have my permission to use my name any way necessary in collecting it. Your help will be greatly appreciated.

"Sincerely yours—
"/s/ C. W. Gorman"

"Rt. 1—Box 210
"Natchez, Miss.
"April 16, 1952

"U. S. Department of Labor
"Wage and Hour and Public Contracts Division
"Basement Medical Arts Bldg.
"624 Travis St.
"Shreveport, La.

"Dear Sir:

"This is to authorize the Labor Dept. to use my name in filing Suit or any action that might be necessary, in collecting overtime pay or compensation, in which I was not properly compensated for hours worked in excess of forty (40) hours per week. The failure of the firm, Waldron Oil Company of Tullos, Louisiana to pay for the over time resulted in back wages of $642.33, which is owed to me at this time.

"Please be advised that it meets with my approval and best wishes for the Labor Board to use my name in making such settlement. Please let me hear from you.

"Yours truly,
"/s/ J. C. Porter"

"Urania, La.
"April 10, 1952

"Wage & Hour & Public Contracts Division
"U. S. Department of Labor
"Basement Medical Arts Bldg. 624 Travis St.
"Shreveport, La.

"Dear Sirs:

"I writing asking you to collect my back time wages due me. from the Waldron Oil Co. of Tullos, La.

"You also have my permissions to us my name any way necessary in collecting it. Your help well be greatly appreciated.

"Sincerely yours—
"/s/ E. H. Kinney"

## Appendix (2)

### J. C. Porter Letter
### Dated April 2, 1951

"April 2, 1951

"M. E. Waldron
"3130 Creswell Street
"Shreveport, Louisiana

"The Waldron Oil Corporation
"Shreveport, Louisiana

"Dear Sir:

"You have advised me of the findings of Donald H. Day, investigator for the Wage and Hour Section of U. S. Department of Labor, that I am entitled to additional wages under the provisions of the Fair Labor Standards Act, and I desire to confirm to you the terms of my employment, to wit:

"M. E. Waldron, individually, is the operator of six oil wells located in the Urania Field of LaSalle Parish, Louisiana, and Waldron Oil Corporation is the operator of four wells located in said field. In my capacity as gang pusher for both M. E. Waldron and Waldron Oil Corporation, I have general supervision of rehabilitation and maintenance work in connection with said wells, and I have discretionary authority to employ workmen to assist me and to purchase ordinary supplies necessary in connection with my said duties. I do very little, if any, actual physical work myself and know that in excess of 80 per cent of my work is purely supervisory.

"I have been receiving as compensation for services rendered to both M. E. Waldron and Waldron Oil Corporation $300 per month. I receive separate checks each month from M. E. Waldron and from Waldron Oil Corporation and understand that complete separate records are kept of all operations by M. E. Waldron and by Waldron Oil Corporation.

"Under our agreement of employment, the $300 per calendar month, includes overtime compensation, should my employment be governed by the Fair Labor Standards Act. I have received the full amount due me for services rendered both from M. E. Waldron and Waldron Oil Corporation, and said compensation covers all overtime, should my employment be governed by the Fair Labor Standards Act. If the records, as kept by my employers, indicate that I am entitled to additional sums allegedly due for over-

time, then said records do not accurately reflect my understanding of our employment agreement, and I hereby give my consent that said records be corrected to accurately reflect the true facts that I have been paid in full and that I am not entitled to additional compensation.

"During the past two years, I have not devoted as much as forty hours during any one work week to either M. E. Waldron or to Waldron Oil Corporation.

"I have no intention of filing, nor will I file any action, legal or otherwise, against M. E. Waldron or Waldron Oil Corporation for additional compensation for services rendered by me as gang pusher.

"Yours very truly,

"/s/ J. C. Porter"

### Appendix (3)

"Durkin v. Waldron

Transcription of Payroll Ledger for Employee J. C. Porter

| Year and Workweek Ending | S | M | T | W | T | F | S | Total | Hourly Rate of Pay | Total Due Worker |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/3/50 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | $1.44 | $5.76 |
| 6/10 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 6/17 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 6/24 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 7/1 | 8 | 8 | 8 | | | | 8 | 32 | —— | |
| 7/8 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | 1.44 | 5.76 |
| 7/15 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 7/22 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 7/29 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 8/5 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 8/12 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | 1.238 | 9.90 |
| 8/19 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | 1.44 | 5.76 |
| 8/26 | 8 | | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 9/2 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | 1.238 | 9.90 |
| 9/9 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | 1.44 | 5.76 |
| 9/16 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 9/23 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 9/30 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 10/7 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 10/14 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 10/21 | | 8 | | 8 | 8 | 8 | 8 | 40 | —— | |
| 10/28 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | 1.44 | 5.76 |
| 11/4 | | 8 | | 8 | 8 | 8 | 8 | 40 | —— | |
| 11/11 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | 1.44 | 5.76 |
| 11/18 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 11/25 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 12/2 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 12/9 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 12/16 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 12/23 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 12/30 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 1/6/51 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 1/13 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | 1.238 | 9.90 |
| 1/20 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | 1.44 | 5.76 |
| 1/27 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | 1.44 | 5.76 |
| 2/3 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 2/10 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 2/17 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 2/24 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |
| 3/3 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 5.76 |

Total $225.54"

"Durkin v. Waldron

Transcription of Payroll Ledger for Employee E. H. Kinney

| Year and Workweek Ending | S | M | T | W | T | F | S | Total | Hourly Rate of Pay | Total Due Worker |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/3/50 | 8 | 8 | | | 8 | 8 | 8 | 40 | $1.00 | $ |
| 6/10/50 | 8 | 8 | | 8 | 8 | | 8 | 40 | " | |
| 6/17 | 8 | 8 | 8 | 8 | 8 | | 8 | 48 | " | 4.00 |
| 6/24 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.00 |
| 7/1 | 8 | 8 | | | | | 8 | 24 | " | |
| 7/8 | 8 | 8 | 8 | 8 | 8 | 8 | | 48 | " | 4.00 |
| 7/15 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 36 | " | 8.00 |
| 7/22 | 8 | 8 | | 8 | 8 | 8 | 8 | 48 | " | 4.00 |
| 7/29 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | " | 8.00 |
| 8/5 | 8 | 8 | 8 | | 8 | 8 | 8 | 48 | " | 4.00 |
| 8/12 | 8 | 8 | | 8 | 8 | 8 | | 40 | " | |
| 8/19 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.00 |
| 8/26 | 8 | 8 | 8 | 8 | | | | 32 | " | |
| 9/2 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | 1.00 | |
| | | | | | | | | | 1.10* | 8.68 |
| 9/9 | 8 | 8 | 8 | 8 | | | 8 | 40 | 1.10 | |
| 9/16 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | " | 8.80 |
| 9/23 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | " | 8.80 |
| 9/30 | 8 | 8 | | | | 8 | 8 | 32 | " | |
| 10/7 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | " | 8.80 |
| 10/14 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 10/21 | | 8 | 8 | | 8 | 8 | 8 | 40 | " | |
| 10/28 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 11/4 | | 8 | | 8 | 8 | 8 | 8 | 40 | " | |
| 11/11 | | 8 | 8 | 8 | 8 | 8 | | 40 | " | |
| 11/18 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | " | 8.80 |
| 11/25 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 12/2 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 12/9 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 12/16 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 12/23 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 12/30 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 1/6/51 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 1/13 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | " | 8.80 |
| 1/20 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 1/27 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 2/3 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 2/10 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 2/17 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 2/24 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 3/3 | | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| | | | | | | | | | Total | $163.08 |

* Increased to $1.10 effective 8/28/50"

"Durkin v. Waldron

Transcription of Payroll Ledger for Employee C. W. Gorman

| Year and Workweek Ending | S | M | T | W | T | F | S | Total | Hourly Rate of Pay | Total Due Worker |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/3/50 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | $1.00 | $4.00 |
| 6/10 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.00 |
| 6/17 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.00 |
| 6/24 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.00 |
| 7/1 | 8 | 8 | 8 |  |  |  | 8 | 32 | " |  |
| 7/8 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.00 |
| 7/15 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | " | 8.00 |
| 7/22 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.00 |
| 7/29 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | " | 8.00 |
| 8/5 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.00 |
| 8/12 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | " | 8.00 |
| 8/19 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.00 |
| 8/26 | 8 |  | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.00 |
| 9/2 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | 1.00* / 1.10 | 8.68 |
| 9/9 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | 1.10 | 8.80 |
| 9/16 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 9/23 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 9/30 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | " | 8.80 |
| 10/7 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 10/14 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 10/21 |  | 8 |  | 8 | 8 | 8 | 8 | 40 | " |  |
| 10/28 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 11/4 |  | 8 |  | 8 | 8 | 8 | 8 | 40 | " |  |
| 11/11 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 11/18 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 11/25 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 12/2 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | " | 8.80 |
| 12/9 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 12/16 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 12/23 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | " | 8.80 |
| 12/30 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 1/6/51 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 1/13 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | " | 8.80 |
| 1/20 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 1/27 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 2/3 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 2/10 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 2/17 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |
| 2/24 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 56 | " | 8.80 |
| 3/3 |  | 8 | 8 | 8 | 8 | 8 | 8 | 48 | " | 4.40 |

$206.68

* Increased to $1.10 effective 8/28/50"