SOUTHERN PACIFIC CO. *v.* GILEO ET AL.

No. 257.   Argued May 1, 1956.—Decided June 11, 1956.

*Arthur B. Dunne* argued the cause for petitioner.   With him on the brief was *Horace B. Wulff.*

*Clifton Hilderbrand* argued the cause for Gileo et al., respondents, and filed a brief for Gileo, respondent.

*Thomas C. Perkins* argued the cause for Eufrazia, respondent. With him on the brief was *Archibald Marison Mull, Jr.*

*Nathaniel S. Colley* argued the cause and filed a brief for Moreno et al., respondents.

MR. JUSTICE MINTON delivered the opinion of the Court.

These five cases present questions of the extent of coverage of the Federal Employers' Liability Act, as amended.[1]

Petitioner, an interstate common carrier by railroad, owns and operates a large carshop, known as Shop No. 9, at Sacramento, California. This shop contains a department for repair of petitioner's cars temporarily removed from service and a department engaged in the construction of new cars for use in interstate commerce by petitioner and a subsidiary.

Respondents Gileo, Eufrazia and Eelk were employed by petitioner in Shop No. 9. Gileo worked on repair of petitioner's cars already in service for almost 10 years prior to his transfer to new car construction 5 months before he was injured. Eufrazia did repair work for 9 months before he was assigned to new car construction a month prior to his injury. Eelk had worked a month on repairs, was transferred to new car construction for 5 weeks, was reassigned to repair work for a month and had been back on new car construction for 3 months when he incurred his injury. Thus, all three of these respondents had at one time worked on repair jobs in Shop No. 9, but there is no dispute that they were engaged exclusively in new car construction when their injuries were incurred.

---

[1] 35 Stat. 65, as amended, 53 Stat. 1404, 45 U. S. C. § 51.

Respondents brought separate suits against petitioner for recovery under the F. E. L. A. Respondent Gileo sued in the Superior Court for the City and County of San Francisco, and respondents Eufrazia and Eelk sued in the Superior Court for the County of Sacramento. In all three suits, petitioner claimed that the F. E. L. A. did not apply because neither it nor respondents were engaged in interstate commerce and that therefore the courts were without jurisdiction to entertain the actions, the exclusive remedy for injured employees in these circumstances resting with the Industrial Accident Commission under the California Workmen's Compensation Act. This challenge to the jurisdiction of the court was rejected in the *Gileo* case, the court ruling as a matter of law that the F. E. L. A. governed the situation before it. Petitioner having stipulated the issues of negligence and the amount of damages, judgment was entered for Gileo. The trial court in the *Eufrazia* and *Eelk* cases ruled in favor of petitioner's contention that it lacked jurisdiction because the F. E. L. A. was not applicable, and judgment was entered for petitioner before trial was had on the issues of negligence and damages. The Supreme Court of California held, in separate decisions, that the Act applied to each of the respondents.[2] We granted certiorari, 350 U. S. 818, because the cases involve interpretation of an important federal statute governing railroad employer obligations to its injured employees.

In the *Eufrazia* and *Eelk* cases, the Supreme Court of California simply entered an order reversing the decisions

---

[2] *Gileo* v. *Southern Pacific Co.*, 44 Cal. 2d 539, 282 P. 2d 872; *Eufrazia* v. *Southern Pacific Co.*, 44 Cal. 2d 881, 282 P. 2d 879; *Eelk* v. *Southern Pacific Co.*, 44 Cal. 2d 882, 282 P. 2d 880. The decisions below holding the two remaining respondents covered by the Act are reported in *Aranda* v. *Southern Pacific Co.*, 44 Cal. 2d 543, 282 P. 2d 875, and *Moreno* v. *Southern Pacific Co.*, 44 Cal. 2d 547, 282 P. 2d 877.

of the trial court. Unlike *Gileo,* petitioner did not stipulate with respect to the issues of negligence and damages. There were no trials of these issues, and, under California practice, the effect of the Supreme Court of California's unqualified reversal is to remand the cases to the trial court. See *Gospel Army* v. *Los Angeles,* 331 U. S. 543, 546. Since the issues of negligence and damages remain to be tried, there is no final judgment in the highest court of the State, and this Court, therefore, lacks jurisdiction to review the *Eufrazia* and *Eelk* cases. 28 U. S. C. § 1257. We therefore dismiss the writs in those two cases.

The sole question which the *Gileo* case presents is whether or not an employee of an interstate rail carrier who is injured while performing work on new cars to be used in interstate commerce by the carrier and its subsidiary can maintain an action for damages against his employer under the F. E. L. A., as amended.

Section 1 of the F. E. L. A., with which we are here concerned, originally provided that "every common carrier by railroad while engaging in commerce" between the States "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce" for injury or death resulting wholly or partly from the negligence of the carrier.[3] This Court early

---

[3] 35 Stat. 65:

"That every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of

construed the statute to require that the employee be "at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it" in order to qualify for coverage under the Act. *Shanks* v. *Delaware, L. & W. R. Co.,* 239 U. S. 556, 558. Later, in *Raymond* v. *Chicago, M. & St. P. R. Co.,* 243 U. S. 43, 45, and *New York Central R. Co.* v. *White,* 243 U. S. 188, 192, this Court held that employees engaged in or connected with new construction for their railroad employers were not engaged in interstate commerce within the meaning of the Act and were therefore not entitled to its benefits. See also *Pedersen* v. *Delaware, L. & W. R. Co.,* 229 U. S. 146, 152. The "moment of injury" and "new construction" doctrines were the source of much confusion to the railroads, their employees and the courts, with the result that the reports were replete with decisions drawing very fine distinctions in determining whether an employee was engaged in interstate commerce within the contemplation of the Act so as to entitle him to bring suit for damages thereunder for injuries incurred while in the carrier's employ. The uncertainty had grown to such proportions that Congress, in 1939, added the following paragraph to § 1 of the Act: [4]

> "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this Act, be considered as being employed by such

---

any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

[4] 53 Stat. 1404.

carrier in such commerce and shall be considered as entitled to the benefits of this Act and of an Act entitled 'An Act relating to the liability of common carriers by railroad to their employees in certain cases' (approved April 22, 1908), as the same has been or may hereafter be amended."

The Senate, in its report on the amendments to the Act, characterized one aim of the amendment in this manner: "1. It broadens and clarifies the law in its application to employees who may be killed or injured while in the service of a railroad company engaged in interstate or foreign commerce." [5] Petitioner concedes that the 1939 amendment abolishes the "moment of injury" rule of the *Shanks* case, *supra.* But it vigorously contends that, because Congress, in amending the Act, did not alter the first paragraph of § 1, it is liable only for employee injuries incurred while the railroad is "engaging in commerce" between the States. It is argued that, since the railroad was here engaged in the construction of new cars, which activity, under the "new construction" doctrine of *Raymond* and *White, supra,* is not commerce between the States, employees injured while engaging in new construction are not covered by the 1939 amendment. With this we cannot agree.

The 1939 amendment to § 1 of the Act provides that "[a]ny employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce," as described in the first paragraph of § 1, "shall, for the purposes of this Act, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits" of the Act. This amendatory language makes it plain that if a railroad employee either

---

[5] S. Rep. No. 661, 76th Cong., 1st Sess. 2.

furthers interstate commerce in the performance of any part of his duties or in any way "directly or closely and substantially" affects such commerce, Congress has placed such an employee on an equal footing, for purposes of coverage under the Act, with those employees who, prior to the 1939 amendment, were held to be employed by the railroads in commerce between the States. Therefore, in determining whether respondent Gileo is entitled to the benefits of the F. E. L. A., the pertinent inquiry is not whether "new construction" is interstate commerce under the test of *Raymond* and *White*. Rather, the crucial question is whether any part of Gileo's duties as a railroad employee furthers interstate commerce or in any way directly or closely and substantially affects such commerce.

Petitioner is engaged in the manufacture of its own railroad cars for use in performing its transportation function in interstate commerce. Such new construction is an integral element in the carrier's total operations, and it follows that workmen employed to build these new cars perform duties which are in "furtherance" of interstate commerce. Furthermore, in carrying out these duties, such employees affect interstate commerce "directly or closely and substantially." Failure to perform their duties would preclude delivery to the railroad of cars which it considers essential to its transportation needs and would substantially impede the carrier's performance of its transportation function and thus the interstate commerce in which it is engaged. This interpretation is consistent with the letter and spirit of the 1939 amendment, which Congress enacted to cure the evils of hypertechnical distinctions which had developed in over 30 years of F. E. L. A. litigation. Whatever justification there may have been before the amendment for holding that employees working on repairs of a railroad's instrumentalities were engaged in interstate commerce and therefore

entitled to the benefits of the Act, *Pedersen* v. *Delaware, L. & W. R. Co., supra,* while those who were working on construction of new railroad facilities were not engaged in interstate commerce and therefore were not covered by the Act, *Raymond* and *White, supra,* has been swept away by the 1939 amendment. This Court recently rejected the "new construction" doctrine in determining whether an employee is "engaged in commerce" within the meaning of a like provision in the Fair Labor Standards Act. *Mitchell* v. *C. W. Vollmer & Co.,* 349 U. S. 427. We hold that § 1 of the F. E. L. A., as amended, covers respondent Gileo.

Respondent Aranda was injured while employed by petitioner as a wheel molder in its wheel foundry at Sacramento, California. There wheels are made to be joined to axles which form the truck base for the petitioner's cars, both new and those already in interstate service. Since wheels which wear out cannot be repaired, they must be recast or remolded and, as a result, worn wheels are continually shipped from all points on petitioner's rail network to its Sacramento foundry for remolding and eventual return to petitioner's rolling stock. A certain level of inventory is indispensable to effective utilization of this mode of operation. The operation itself is a vital link in the chain of petitioner's function as an interstate rail carrier. It is thus plain that Aranda's duties as a wheel molder both served to further interstate commerce and directly or closely and substantially affected such commerce. We therefore hold that he is entitled to the benefits of the Act.

Respondent Moreno was employed as a laborer and was injured while laying rails in a retarder yard which petitioner was constructing for the purpose of facilitating the movement of freight trains in interstate commerce by use of a new "switching" method. The yard was to be used in connection with petitioner's main line of track.

It was opened to interstate traffic 4 months after Moreno was injured.  Passage of the 1939 amendment makes unnecessary indulgence in nice distinctions relating to whether Moreno was engaged in new construction or construction which, although new, was merely a substitute for petitioner's existing method of switching cars.  Cf. *Agostino* v. *Pennsylvania R. Co.,* 50 F. Supp. 726.  In view of what we have said above, it is clear that Moreno, in the performance of his duties, was furthering interstate commerce and that his work directly or closely and substantially affected commerce, within the meaning of the 1939 amendment.

The judgments in

> *Gileo* v. *Southern Pacific Co.,*
> *Aranda* v. *Southern Pacific Co.,*
> *Moreno* v. *Southern Pacific Co.,* are

*Affirmed.*

The writs in

> *Eufrazia* v. *Southern Pacific Co.,*
> *Eelk* v. *Southern Pacific Co.,* are

*Dismissed.*

MR. JUSTICE HARLAN concurs in the result.

MR. JUSTICE REED and MR. JUSTICE FRANKFURTER agree that the writs in *Southern Pacific Co.* v. *Eufrazia* and *Southern Pacific Co.* v. *Eelk* must be dismissed because they were improvidently granted for want of final state court judgments.  Regarding *Southern Pacific Co.* v. *Gileo, Southern Pacific Co.* v. *Aranda,* and *Southern Pacific Co.* v. *Moreno,* they disagree with the Court's theory in applying the Act of 1939, for the reasons set forth in MR. JUSTICE FRANKFURTER's dissent in *Reed* v. *Pennsylvania R. Co., post,* p. 508.