James P. MITCHELL, Secretary of La-
bor, United States Department of
Labor, Appellant,

v.

John D. RAINES, Appellee.

No. 15977.

United States Court of Appeals
Fifth Circuit.

Nov. 14, 1956.

Bessie Margolin, Asst. Sol. U. S. Dept. of Labor, Washington, D. C., Stuart Rothman, Sol., Sylvia S. Ellison, Lawrence P. Hochberg, Attorneys, United States Department of Labor, Washington, D. C., Beverley R. Worrell, Regional Attorney, Birmingham, Ala., for appellant.

James V. Davis, Leonard Farkas, Albany, Ga., Farkas, Landau & Davis, Albany, Ga., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The District Court, denying his suit, § 17, Fair Labor Standards Act, 29 U.S. C.A. § 201 et seq., for injunction to compel compliance with hours of work, rate of pay and record-keeping requirements of the Act, held that the Secretary had failed to sustain his burden of proving that the sale and delivery of lumber to the Georgia State Highway Department for its official use was, to the Employer's knowledge, commerce or the production of goods for commerce, 29 U.S.C.A. § 203.

The utter simplicity of the case, confined as it is to the limited period of July 1, 1953 through July 1, 1954, demonstrates, we think, that this conclusion

was induced by a misapprehension of applicable legal standards and must, therefore, be rejected, Galena Oaks Corporation v. Scofield, 5 Cir., 218 F.2d 217, as clearly erroneous, F.R.Civ.P. 52(a), 28 U.S.C.A.

Indeed, the whole thing seems to stem altogether from a deep-seated opposition by the Employer to the idea that the Act should apply at all, cf. N.L.R.B. v. McGahey, 5 Cir., 233 F.2d 406, or an ostrich-like unwillingness, Warren Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 93, 63 S.Ct. 125, 87 L.Ed. 83, affirming 5 Cir., 124 F.2d 42, to even look at, much less see, or discern obvious facts differentiating the controverted activity from a traditional retail lumberyard which, we are informed, is administratively treated as normally being outside the scope of the Act.

By no test was the questioned activity either sporadic, insubstantial in type or volume, or its interstate character infused by any sort of reverse process of accidental actual, as distinguished from intended, use long after the event.

For the year in question, out of a total sales value of $89,066.19, sales to the Highway Department comprised over 80% ($76,839.68). Moreover, the sales in practically all instances, were direct in the sense that deliveries did not come out of the Employer's stockpile or inventory. Under the Highway Department system of procurement, it determined its needs for lumber, taking into account the projects then scheduled for that District. These requirements were then circulated to the trade (including this Employer) and sealed bids would be submitted by the interested suppliers. The actual contract would then be awarded to the lowest bidder. The Employer here was, therefore, the low bidder on all of the numerous requisition-contracts filled by him. On receipt of the award, the Employer then cut, sawed and processed logs and timbers to produce the desired lumber and made delivery to the District Yard at Douglas, Georgia, where most of it was creosoted and stockpiled for routine, regular use.

The production was, therefore, specifically undertaken to meet specific needs of a single, but substantial, customer. Of course, the Employer was bound to know the status of the Georgia Highway Department, see Georgia Code Annotated Title 95, Chapter 15, §§ 1504, 1606; 1501, 1504, 1705, 1710, 1713, 1722, 1724; 1607, 1608. And it was undisputed that the maintenance, upkeep and repair of all highways, whether designated by State or Federal numbers, within the Georgia Highway System was the responsibility of the Highway Department and that all of these purchases were officially made to fulfill that general duty. By proof and stipulation, it was likewise undisputed that these highways were regularly used in the transmission of United States postal matter and for the transportation of goods to and from points in Georgia and other states. Their character as direct instrumentalities of interstate commerce was, therefore, positively established.

And what was it that insulated the Employer from knowledge (and the reasonable teachings of knowledge) of these obvious, Tobin v. Celery City Printing Co., 5 Cir., 197 F.2d 288; Schulte v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114; Warren-Bradshaw Drilling Co. v. Hall, supra; Southern Advance Bag & Paper Co. v. United States, 5 Cir., 133 F.2d 449; Fleming v. Enterprise Box Co., D.C.S.D.Fla., 37 F.Supp. 331, affirmed 5 Cir., 125 F.2d 897, certiorari denied Enterprise Box Co. v. Holland, 316 U.S. 704, 62 S.Ct. 1312, 86 L.Ed. 1772, facts? Naught but the circumstance, considered by the District Judge to be decisive, that the District Highway Engineer, as a witness, could not identify the specific use of any particular piece of lumber supplied, United States v. Darby, 312 U.S. 100, 118, 61 S.Ct. 451, 85 L.Ed. 609, or trace any of it into specific maintenance or repair projects. And from this it was argued that the lumber might have gone into building barns, sheds, or other structures only remotely related to highway maintenance, and into "new" construc-

tion or bridges then perhaps thought to be outside the Act, cf. Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196; Reed v. Pennsylvania Railroad Co., 351 U.S. 502, 76 S.Ct. 958, 100 L.Ed. 1366; Southern Pacific Co. v. Gileo, 351 U.S. 493, 76 S.Ct. 952, 100 L.Ed. 1357.

But this intricate pattern of theoreticals ignored the uncontradicted "practical considerations," Mitchell v. Vollmer, supra, not the least of which was that the Requisitions frequently stated on their face "Charge to: Maintenance direct" or similar language, most of the material was "heavy stuff" (8x10's, 4x10's, 3x8's, etc.) commonly referred to as "bridge timbers" and unsuitable for miscellaneous use, other material was specifically described as "sign posts" (for essential directional highway markers, warning devices, etc.) and lighter pieces (1x6's, etc.) were regularly used to fabricate signs and markers.

The total impact of unimpeachable evidence was that lumber in large quantities was regularly needed, acquired and used in the extensive maintenance of a complex network of roadways comprising essential arteries of interstate commerce. The Employer could no more ignore this probable intended use of these materials in the maintenance and upkeep of these highways than he could their physical existence, as such, or their direct importance as instruments of commerce. If he did not know, it was because he did not look, or looking, did not see, or want to see what was so plainly there. That is enough. Tobin v. Celery City Printing Co., supra; Schulte v. Gangi, supra; Warren-Bradshaw Drilling Co. v. Hall, supra.

The Employer was, therefore, producing goods for commerce, Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745; Thomas v. Hempt Bros., 345 U.S. 19, 73 S.Ct. 568, 97 L.Ed. 751, and was charged with knowledge that he was doing so. And for this activity, Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332,

87 L.Ed. 460; Mabee v. White Plains Publishing Co., 327 U.S. 178, 184, 66 S. Ct. 511, 90 L.Ed. 607; Bodden v. Mc-Cormick Shipping Corp., 5 Cir., 188 F.2d 773, 775, he was therefore subject to the Act, and the cause must be reversed for further and not inconsistent proceedings.

Reversed and remanded.