Rose POWERS, as Administratrix of the Goods, Chattels and Credits of Edward J. Powers, Deceased, Plaintiff,

v.

The NEW YORK CENTRAL RAILROAD COMPANY, Defendant.

United States District Court
S. D. New York.
Feb. 26, 1957.

Irving Levine, New York City, for plaintiff.

Gerald E. Dwyer, New York City, for defendant (C. Austin White, New York City, of counsel).

MURPHY, District Judge.

Defendant's motion for judgment n. o. v. raises a perplexing question of first impression under the Federal Employers' Liability Act, 45 U.S.C.A. § 51.

James Powers was a crane operator employed by defendant in its West 60th Street freight yard abutting the Hudson River. Some time in the early evening of March 10, 1949, his motionless body was discovered in the river. He was rescued by fellow employees, resuscitated, removed to a nearby hospital and expired, all in a period of either three or four hours. His widow, on behalf of herself and infant children, alleging jurisdiction under the F. E. L. A. (diversity jurisdiction being prevented by identity of citizenship) has had a jury trial on the theory, not that the deceased had drowned by reason of any negligence of defendant but rather that defendant was negligent in not effecting a more prompt rescue and because of its failure to have appropriate life saving equipment and prompt medical attendance at hand, such negligence being alleged as the proximate cause of his death.

Certain facts were undisputed. Powers' hours of employment were 8 A.M. to 5 P.M. with a stipulated accepted custom of an additional half-hour for rest, wash-up and draining his crane, if necessary. He arrived at the hospital at 7:23 P.M. and expired at 9:30 P.M. The check-out diagnosis in the hospital record was "Submersion—pulmonary edema." This record also discloses that Powers was alcoholic and resisted treatment. The autopsy report by the office of the New York City Medical Examiner states that the cause of death was submersion and acute alcoholism (the brain contained three-plus alcohol).

It was also undisputed that when he was taken from the water two fellow employees, working alternately for 50 minutes, resuscitated him and removed him to an unheated room on a pier, stripped him of his wet clothing and massaged his body while he resisted. He was then removed to the hospital in a private ambulance summoned by defendant. During this period of resuscitation there were no blankets available, no stretcher, no inhalator, no drugs and no doctor, although when he was being massaged the men applied burlap bags to his naked body.

The facts principally in dispute concerned the time prior to the discovery of the body in the water, the time of the discovery and the cause of death. The legal problem that is posed is whether or no Powers came within the coverage of the Act.

Two members of the crew of one of defendant's tugs who assisted in the rescue fixed the time when they were called to help at somewhere between 5 and 5:30 P.M. Another employee of defendant testified that he saw Powers' motionless body in the water about 5:40 P.M. and that it was he who called the tug. His recollection was that the tug had its running lights on and he thought it also had its searchlight lit. One of defendant's policemen fixed the time of hearing some splashing in the water and seeing the motionless form of Powers about 6:40 P.M. In one signed statement he fixed the time at 6:40 P.M. and in another at 5:40 P.M. Another employee who assisted in the rescue fixed the time of the rescue operations about 6:20 P.M. or later. This employee also testified that when Powers was rescued he had a Navy pea jacket on and that in rescuing him he used his flashlight to spot him in the water. An accident report made out by defendant at the time fixed the time at 6:40 P.M. The log of the marine supervisor of defendant indicates the time somewhere between 6:45 and 7:30 P.M.

Another witness, a fellow employee, testified that when he reported for work that evening at 5:00 P.M. he saw Powers alive and heard him making a telephone

call to a nearby tavern from the pier about 5:50 or 6 P.M. This time was corroborated by another employee who appeared on the scene to make inquiries as to who was using the 'phone. The same employee in a written statement signed some years after the event fixed the time of this occurrence at 5:05 P.M. although in another statement signed on the day of the accident he fixed it at 5:40 P.M.

The jury was given a number of written interrogatories, the first two relating to the time element. Those interrogatories and the answers of the jury are as follows:

"1.—At what time on March 10, 1949, before Mr. Powers was in the water, was he last seen on dry land? *'About 5:15 to 5:40.'*

2.—At what time on March 10, 1949, was the body of Mr. Powers first seen in the water? *About 5:45 to 6:15 P.M.'* "

With reference to the cause of death a doctor called by plaintiff who neither saw nor treated Mr. Powers was asked a hypothetical question and gave as his expert opinion that the cause of death was submersion *and* that Powers was not wrapped in blankets; that he was not put on a stretcher; that he was not kept in a warm room; that he was not given an inhalator and that he was not given certain drugs.

The Chief Medical Examiner of the City of New York testified that after autopsy and chemical analysis of Powers' vital organs the cause of death was certified to be submersion and acute alcoholism.

The other interrogatories submitted to the jury and their answers are as follows:

"3. — What was the proximate cause of Mr. Powers' death?
 x (a) Submersion
 x (b) Pulmonary edema
 (c) Acute alcoholism
 (d) Absence of inhalator
 (e) Absence of stretcher
 (f) Absence of pulmotor
 (g) Absence of life saving equipment
 (h) Absence of doctor
 (i) Failure to effect a more prompt rescue
 x (j) Failure to conserve body heat
 (k) Failure to administer drugs
 x (l) Failure to summon N.Y.C. Police Emergency Squad
 (m) Other (please specify) *'Failure of R.R. to maintain trained life saving & first aid personnel & not having first aid station.'*
 (n) Unable to determine
 Please check those of above that apply.

4. — Did the absences or failures mentioned in Question #3 create an unreasonable risk of harm to persons like the plaintiff? *'Yes.'*

5. — If your answer to Question #4 is "Yes", was such risk of harm reasonably foreseeable by the defendant? *'Yes.'*

6. — Was the defendant railroad negligent, under the circumstances of this case, in failing to have blankets, inhalator, pulmotor, stretcher, life saving equipment or to provide a heated room to which Mr. Powers could be removed? *'Yes.'*

7. — Is your verdict for the plaintiff or the defendant? *'Plaintiff.'*

8. — If your verdict is for the plaintiff what is the amount of the plaintiff's damages? *'$35,000'.*"

Quite obviously the jury found that the railroad was guilty of negligence and that the itemized acts or omissions were some of the factors that caused Powers' death.

Although we are conscious of the Supreme Court's frequent admonitions that judges are not to substitute their ideas of negligence for those of the jury, e. g., Schulz v. Pennsylvania Railroad Co., 1956, 350 U.S. 523, 76 S.Ct. 608, 100 L. Ed. 668; Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916 (1946); Cahill v. New York, New Haven & Hartford R. Co., 2 Cir., 1955, 224 F. 2d 637, 1955, reversed 350 U.S. 898, 76 S.Ct. 180, 100 L.Ed. 790, opinion recalled and case remanded, 1956, 351 U.S. 183, 76 S.Ct. 758, 100 L.Ed. 1075, judgment for plaintiff affirmed per curiam, 2 Cir., 1956, 236 F.2d 410, the questions remain whether Powers was an "employee" within the meaning of the Act and the duty, if any, the railroad owed to him at the time and place in question.

Powers, some time *after* his hours of employment ("about 5:15 to 5:40 P.M.") was still on the railroad premises and "about 5:45 to 6:15 P.M." his body was first seen in the waters of the Hudson River. Up to this latter half-hour period no negligence is charged and none was proved or attempted to be proved, so that any negligence that exists must of necessity begin during the period from 5:45 to 6:15 P.M. or 15 minutes to 45 minutes after the 5:30 P.M. stipulated time for leaving the premises. The Hudson River is no part of defendant's premises. Query: At that time and place was Powers an "employee" of defendant?

 Although the "moment of injury" theory has been removed by the 1939 amendment of the Act (Southern Pacific Co. v. Gilio, 1956, 351 U.S. 493, 76 S.Ct. 952, 100 L.Ed. 1357; Reed v. Pennsylvania Railroad Co., 1956, 351 U.S. 502, 76 S.Ct. 958, 100 L.Ed. 1366), the authorities, before the amendment, clearly indicate that Powers was not employed in interstate commerce at the time of the alleged negligence. Young.

v. New York, N. H. & H. R. Co., 2 Cir., 1934, 74 F.2d 251; Id., 2 Cir., 1935, 79 F.2d 844; Sassaman v. Pennsylvania R. Co., 3 Cir., 1944, 144 F.2d 950. Since 1939 an interstate carrier's liability under the Act is to "any person suffering injury while he is employed by such carrier in such commerce." The question here is whether Powers at the time of the acts complained of was an "employee" to the extent that his widow had the right to invoke the jurisdiction of this court under the F. E. L. A. We hold that he was not—no more so than he would be if his body was found on the public highway adjoining the railroad's property on the east. While Powers had the right of ingress and egress over the property of defendant on his way to and from work and to hold the railroad to account for any negligence that would cause him injury on his way, that is not the charge here. How he got in the water—by accident or design—was not proved either by fact or inference. The tragedy begins with Powers' motionless body in the waters of the Hudson River. No claim is made under some common law theory of negligent rescue. Cf. cases cited in Prosser on Torts, pp. 192–194. There is no diversity jurisdiction. Jurisdiction is claimed under an Act of Congress and we hold under the time findings of the jury that Powers was not "an employee." Cf. Mostyn v. Delaware, L. & W. R. Co., 2 Cir., 1947, 160 F.2d 15; Atchison, T. & S. F. R. Co. v. Wottle, 10 Cir., 1952, 193 F.2d 628.

But assuming that he was an "employee" at the time and place we have grave doubt that the railroad owed him any duty to treat.

 While it is true that the Supreme Court has held under the Jones Act, 46 U.S.C.A. § 688, that a shipowner owes a duty to treat an injured seaman, Cortes v. Baltimore Insular Line, 1932, 287 U.S. 367, 376, 53 S.Ct. 173, 77 L.Ed. 368, it expressed in the same case the opinion that a railroad under the F. E. L. A. owed no corresponding duty to one of its employees except in special circumstances. In any event the Second Circuit has stat-

ed in no uncertain terms, but possibly as dicta, that a railroad is under no legal duty to provide medical treatment to its employees. Lanni v. Wyer, 2 Cir., 1955, 219 F.2d 701, 703. If a railroad is under no duty to provide medical treatment to an injured railroad employee how can it be charged with negligence in not having lifesaving and first aid equipment and personnel, failure to conserve body heat and failure to summon the New York City Police Emergency Squad?

Plaintiff relies on Anderson v. Atchison, T. & S. F. R. Co., 1948, 333 U.S. 821, 68 S.Ct. 854, 92 L.Ed. 1108, in which the Supreme Court overruled a demurrer to a complaint which charged a railroad with negligence in failing to institute and pursue a search for a conductor who in the performance of his duties had fallen from a train and died of exposure to very cold weather from the time he fell until he was rescued. The Supreme Court held that a jury could have found, if proof were permitted, that his exposure and death were due in whole or in part to failure of the railroad employees to do what a prudent and reasonable man would have done under the circumstances of the situation.

Although one of the acts charged and submitted to the jury was "failure to effect a more prompt rescue", the jury did not so find. In fact the defendant's employees rescued the man promptly, or so it would seem from the jury's refusal to find that there was a failure of a prompt rescue. The only acts of negligence found by the jury were, failure to conserve body heat, failure to summon the New York City Police Emergency Squad, failure of the railroad to maintain trained lifesaving and first aid personnel and not having first aid station. These appear to be all combinations of a failure to provide medical treatment. The Anderson case only goes so far as to hold that the complaint in that case stated a cause of action and that the acts of negligence complained of were the failure to institute and pursue a prompt rescue. It is not an expression by the Supreme Court that a railroad has an obligation to treat an injured employee.

Liability for negligence must be predicated upon an injury or death from the very peril occasioned by the defendant's breach of duty and if the peril here was the failure to treat there must be a corresponding duty to treat and we hold that none existed.

Accordingly the verdict for plaintiff is set aside and judgment n. o. v. granted for defendant.

This is an order. No settlement is necessary.