Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

DAKOTA FLOORING COMPANY, Inc., a corporation, and D. B. Harney, Defendants.

Civ. A. No. 216.

United States District Court
D. North Dakota,
Southwestern Division.

Dec. 1, 1961.

**162**

Harper Barnes, Regional Atty., Office of Solicitor, U. S. Department of Labor, Kansas City, Mo., for plaintiff.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, N. D., for defendant.

REGISTER, Chief Judge.

The above-entitled cause which came on for trial to the Court on June 1, 2 and 3, 1960, was continued to and concluded on October 2, 1961, on the testimony of the witnesses, the pleadings, including admissions, interrogatories and answers to interrogatories and the exhibits, and after hearing and considering the evidence introduced by the respective parties and being fully advised in the premises, the Court now makes and files herein the following findings of fact, conclusions of law and judgment.

## FINDINGS OF FACT

1. The Secretary of Labor, United States Department of Labor, has brought this action pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. §§ 201–219, hereinafter called the Act, to enjoin defendants from violating the overtime requirements of Section 15(a) (2) and the record-keeping provisions of § 15(a) (5) of the Act.

2. (a) Dakota Flooring Company, Inc. is a corporation organized and existing under and by virtue of the laws of the State of North Dakota, where it is engaged at Mandan and Bismarck in the receipt, handling, sale, distribution and installation of flooring and acoustical ceiling tile, linoleum, wall paneling and carpeting, and in the operation of a warehouse at Fargo, North Dakota, all within the jurisdiction of this Court.

(b) Defendant, Donald Harney, resides in Mandan, North Dakota, within the jurisdiction of this Court and is a stockholder, the president and chief executive officer of the corporation in charge of personnel practices and the direction, control, employment, and supervision of employees and of rates of pay and hours of work of employees.

3. At all times material hereto and, particularly during the period October 1, 1956 to October 1959, the defendant corporation contracted with and engaged either as a subcontractor, or as a subcontractor of a subcontractor, or contracted directly with various federal, state, county and municipal agencies, school boards and hospitals, or with corporations, individuals or businesses for the sale and installation by its employees of flooring and acoustical ceiling tile, linoleum, paneling and other materials. Defendant company also sold said materials at retail to purchasers at its stores.

4. Defendants employed approximately 21 employees at various times during the aforesaid period as mechanics installing tile and other materials on the jobs or projects hereinafter referred to and in receiving, unloading and handling flooring tile, acoustical ceiling tile and other materials, shown on plaintiff's Exhibits 26, 27 and 28, which were received in interstate commerce from outside the State of North Dakota at defendants' establishments at Mandan, Bismarck, Fargo and at construction or installation sites where defendants' employees were performing work throughout the State of North Dakota, as shown on plaintiff's Exhibits 29 and 30.

5. The defendants and their employees installed flooring and ceiling tile or other materials in buildings and facilities for various businesses, industries or companies, such as the American Crystal Sugar Company refinery at Moorhead, Minnesota, The Fargo Forum Company of Fargo, Security National Bank at

Hunter, Northwest State Bank at Hillsboro, Lincoln National Bank at Fargo, Gate City Savings & Loan Association at Fargo, Lincoln Mutual Casualty and Life Insurance Company at Fargo, American Telegraph & Telephone Company relay station at Bismarck, Northwestern Bell Telephone Company at Fargo, Radio and Television Station KBMB at Bismarck, Soo Line Railroad at Bismarck, which companies and businesses defendants admitted were engaged either in interstate commerce or in the production of goods for interstate commerce.

6. The defendants and their employees also installed flooring tile in various buildings used in the operation of the refinery of the Standard Oil Company at Mandan which the evidence showed refined crude oil and produced and shipped petroleum products in interstate commerce.

7. (a) Although defendants deny that the buildings and facilities named in Sections 5 and 6 above, upon which their employees worked in the installation of flooring and acoustical ceiling tile and other materials, were facilities used in interstate commerce or in the production of goods for interstate commerce at the time the work was being performed, the evidence established that at the time the installation work was being done on buildings for the Standard Oil Company at Mandan, Northwestern Bell Telephone Company and the Fargo Forum at Fargo, these buildings were actually occupied by each of the companies and being used by the respective companies either for the production of goods for interstate commerce or for their operations in interstate commerce.

(b) The evidence further established that installation work performed for Television Station KBMB, the American Telephone and Telegraph relay station, the Gate City Savings & Loan Association, the Security National Bank building at Hunter and the Lincoln Mutual Casualty and Life Insurance Company buildings was in buildings or facilities which were being constructed either adjacent to or within a few blocks of, and in no instance over a mile from, already existing buildings and facilities being used by each of the respective companies either for interstate commerce or for the production of goods for interstate commerce in their operations; and that each of these buildings or facilities upon which defendants' employees were employed were either to replace or supplement pre-existing buildings or facilities used and owned by the respective companies, which buildings were not adequate or sufficient for the expanding needs and demands of the businesses of the companies.

8. (a) Defendants and their employees engaged in the installation of flooring tile, acoustical ceiling tile and other products on facilities and buildings, such as squadron operations buildings, readiness buildings, petroleum, oil and lubrication buildings, mechanical shops and warehouses, aircraft and warning squadron buildings, hangars, utilities, ordnance and storage buildings, and Semi-Automatic Ground Environment System (SAGE) buildings for the United States Air Force at Grand Forks, Minot and Dickinson in North Dakota, which buildings were being constructed for use by the Air Defense Command of the United States in the supplementation and expansion of air defense facilities.

(b) While the buildings in which defendants and their employees made installations were located on new air field bases which were physically separated from existing air fields, the air bases and the buildings which were being constructed on them, in which installations were made, were intended to and did fit into the existing Air Defense Command as links in the chain of air defense across the northern United States, and were intended to and did provide facilities for the operation of said Air Force bases and the flight of military aircraft which were moving from points outside the State of North Dakota to said bases in the State of North Dakota, and from the bases in North Dakota to points and places outside the state of North Dakota.

(c) In addition to the use by aircraft flying interstate, the bases and some of the buildings thereon, in which defendants and their employees made installations, were also used to provide weather information to aircraft flying outside the State of North Dakota, both within and without the area of the United States, and the SAGE units provided information by use of radar on aircraft in flight, which information was transmitted by and through Air Force facilities at Grand Forks and Minot to the Air Force Continental Command at Colorado Springs, Colorado and to other existing SAGE units on air bases located throughout the United States.

(d) The work on buildings and facilities at these bases was performed by defendants' employees at various periods in the development of said bases, beginning after the runways were laid down and at a time when the United States Air Force aircraft and personnel were moving to and from the bases at Grand Forks and Minot, North Dakota to points and places outside the State of North Dakota.

9. Defendants' employees also installed flooring tile and other materials in various types of buildings, such as school buildings, Air Force buildings and other buildings for the United States government outside the State of North Dakota, at Moorhead, Detroit Lakes, Ada, Hawley and Crookston in Minnesota, Aberdeen, Eagle Butte, Gettysburg, McIntosh and Rapid City in South Dakota, and Glasgow, Glendive and Ft. Peck in Montana.

10. (a) Defendant, Dakota Flooring Company, operates combined warehouses and stores, which stores sell at retail in the Cities of Mandan and Bismarck, North Dakota, located approximately six miles apart. The warehouse used and operated by the company at Fargo, North Dakota is over 190 miles from Mandan or Bismarck.

(b) The main office of the company is located at Mandan, North Dakota where all employment records for employees and personnel are maintained and the records of purchases of materials and sales for the stores and warehouses are also maintained there.

11. Many of the projects upon which defendants' installers were employed ran for weeks or months at a time and employees worked as many as five to six weeks and spend as much as 75 to 80 per cent of their time on projects located outside the cities of Mandan, Bismarck and Fargo, North Dakota. While occasionally installers might cut a piece of linoleum or sweep out the warehouse or store at Bismarck or Mandan, none of them estimated the time so spent to exceed six to eight hours in a year and the evidence does not disclose that they ever performed any sales work in the stores.

12. Violations charged in the complaint covered the company's fiscal years ending September 30, 1957, September 30, 1958, September 30, 1959, and, thereafter, to the date of the trial on June 1, 1960. At the time of the trial, defendants filed an amended answer alleging their operations were exempt from the overtime provisions of the Act by virtue of Section 13(a) (2), and by agreement of counsel, the purchase and sales records for the aforesaid three fiscal years were checked and reviewed, but the records for fiscal year October 1, 1956 to September 30, 1957, for the most part had either been lost or destroyed so that there was not sufficient record of such sales or purchases for that year to provide a basis for determining the types of sales and installations made by the company.

13. (a) Company records show that total flooring and ceiling tile, carpeting and other materials purchased by the company for the fiscal year ending September 30, 1959, amounted to $442,197.-65, and that $113,102.35 of such goods or materials purchased were delivered directly to job sites and $48,832.25 of said materials were delivered directly to the Fargo warehouse, so that 30 per cent of total purchases for that year never passed through either the Mandan or Bismarck establishments or stores, but were delivered directly to job sites or to

the Fargo warehouse for subsequent installation on job projects.

(b) Company records show that total flooring and ceiling tile, carpeting and other materials purchased by the company for the fiscal year ending September 30, 1958, amounted to $223,746.07, and that $48,251.87 of such goods or materials purchased were delivered directly to job sites and $25,734.91 of said materials were delivered directly to the Fargo warehouse, so that 33 per cent of total purchases for that year never passed through either the Mandan or Bismarck establishments or stores but were delivered directly to job sites or to the Fargo warehouse for subsequent installation on job projects.

(c) During fiscal years 1958 and 1959, the available company records show 26 different job sites over forty miles away from defendants' establishments at either Mandan or Bismarck where job site deliveries were made.

14. (a) Total sales of materials and services shown by company records for the fiscal year ending September 30, 1959, were $548,623.05, of which amount sales identifiable as made by the Bismarck establishment amounted to $81,021.60.

(b) Total sales shown by the company records for the fiscal year ending September 30, 1958, were $440,726.27, of which amount sales identifiable as made by the Bismarck establishment were $18,613.57.

15. Of the company's total sales of $548,623.05 for fiscal 1959, income was derived from sale of installation work and materials on the following types of construction projects or jobs:

(a) The sum of $236,508.45, or 43 per cent of total sales was received from materials and work performed by the company as a subcontractor or as a subcontractor of a subcontractor under written contracts or specifications obtained by competitive bid.

(b) Income from additional work performed as a subcontractor or subcontractor of a subcontractor for which there was no record of competitive bid or writ-

ten contract amounted to $50,530.39, or 9 per cent of total income.

(c) Approximately $20,935.00, or 3 per cent, was derived from work performed by the company as a direct contractor pursuant to written contract obtained by competitive bid.

(d) Income derived from installation work performed for churches, schools, hospitals, federal and state agencies during this period amounted to $32,775.59, or 5 per cent of sales.

16. Thus, for the fiscal year 1959, 52 per cent of the company's income from sales of materials and services installing materials was derived from work performed as a subcontractor or as a subcontractor of a subcontractor, and an additional 12 per cent was received from work performed as a contractor and from work for businesses, schools, churches, hospitals or other governmental agencies.

17. During the fiscal year 1958, the company's total income from material and installation sales amounted to $440,726.27, most of which was received from the following types of installation work:

(a) The sum of $176,867.19, or 40 per cent, was received from work performed by the company as a subcontractor or as a subcontractor of a subcontractor pursuant to written contracts or specifications obtained by competitive bid.

(b) Income from additional work performed as a subcontractor or subcontractor of a subcontractor for which there was no record of competitive bid or written contract amounted to $100,946.00, or 22 per cent of total income.

(c) Approximately $9,802.53, or 2 per cent, was derived from work performed by the company as a direct contractor pursuant to written contract obtained by competitive bid.

(d) Income derived from installation work performed for churches, schools, hospitals, federal and state agencies during this period amounted to $25,185.78, or 5 per cent of sales.

18. Thus, for the fiscal year 1958, 62 per cent of the company's income from

sales of materials and services installing materials was derived from work performed as a subcontractor or as a subcontractor of a subcontractor, and an additional 7 per cent was received from work performed as a contractor and from work for businesses, schools, churches, hospitals or other governmental agencies.

19. The company and its employees in the construction installation work are incorporating the flooring and ceiling tile, paneling and other materials into the buildings or facilities upon which they are employed so that such materials become a part of the buildings, and it is apparent that the costs of the company's installation services are included in the prime contractor's costs of constructing the building or into the costs of the subcontractors performing work for the prime contractors.

20. On various construction jobs or projects, defendants' installation mechanics worked along with other building trades craftsmen, such as carpenters, electricians and plumbers and, on some jobs union cards were obtained for employees and the work performed according to building trades contracts.

21. Two per cent of the company's total income is derived from the sale of floor and ceiling tile, carpeting, linoleum, paneling and other materials from over-the-counter sales in the Mandan and Bismarck establishments.

22. The testimony disclosed that the price for work and materials installed pursuant to competitive bidding is, among other factors, determined by the distance of the project from the company's establishments, the amount of work scheduled or contracted for, when the installation can be made and whether or not defendant Harney wanted the job.

23. As found in findings 15 and 17 above, over 25 per cent of defendants' work is performed pursuant to written contracts setting forth, in varying degrees of detail, the time the work is to be performed and the standards by which the defendants' employees are to install the tile and other materials.

24. The testimony and exhibits show that defendants' business is within the meaning and carried on as a part of the construction industry within the general classification of business referred to as "Building Contractors" contained in Paragraph 29 of Interpretative Bulletin No. 6, issued by the Administrator of the Wage and Hour Division in 1942, in which the Administrator stated that building contractors were typical of businesses outside of the retail concept and Congress provided, when it amended the Section 13(a) (2) retail exemption in 1949, that the rulings and interpretations of the Administrator should remain in effect unless inconsistent with the 1949 amendments to the Act, and defendants have failed to prove that the company's business is the type of business intended to be exempted by the amendment since defendants are primarily engaged in the installation of flooring and ceiling tile, paneling and other materials in the construction, repair and remodeling of buildings and various other types of structures normally contracted for and performed by building contractors.

25. (a) Prior to the time that the defendants' establishment was visited by the investigator for the Wage and Hour Division, the company had not paid any employees time and one-half for hours worked in excess of forty hours per week and the testimony of the employees, when compared with the company records, disclosed that the hours of work, as shown on the company records, with respect to hours worked in excess of forty hours per week had been reduced by one-third to show compliance with the overtime requirements of the Act. When this was called to defendant Harney's attention, he claimed he had allowed the men to "boost" their hours which was denied by the employees who testified that the hours had been reduced by one-third to simulate compliance and that installation mechanics had worked many weeks as much as 50 to 60 hours per week for which they had not been paid overtime.

(b) Florence Flatten, an office employee, employed at the company's office at Mandan maintaining books and records of purchases and sales of services and merchandise during the last three years, normally worked fifty-one hours a week for which she was paid a monthly salary regardless of the number of hours worked and no record of her hours of work was maintained.

(c) After the investigator visited the establishment at Mandan in October 1958, the defendants commenced paying time and one-half to installation mechanics on installation projects performed for the Air Force and various other agencies of the United States Government because of the requirements of the Davis-Bacon Act, but refused and failed to pay overtime for work on projects such as those enumerated under paragraphs 5, 6 and 7 above; and, at the time of the trial, both in June of 1960 and October of 1961, defendants denied that they were in interstate commerce, that they were in any way engaged in interstate commerce or in the production of goods for interstate commerce or subject to any of the requirements of the Fair Labor Standards Act.

## CONCLUSIONS OF LAW

I. The Court has jurisdiction of the parties hereto and of the subject matter.

II. Defendant, Donald Harney, is an employer within the meaning of Section 3(d) of the Act.

III. (a) Dakota Flooring Company's employees employed in the unloading, handling and warehousing of flooring and ceiling tile, linoleum, paneling and other materials or products which are received in interstate commerce from outside the State of North Dakota are engaged in interstate commerce and subject to the Act.

(b) Employees employed as installers of flooring and ceiling tile, paneling and other materials in buildings and facilities used or intended to be used by companies, individuals or businesses, such as banks, newspapers, railroads, radio and television stations, insurance companies, savings and loan associations, refineries or other manufacturing companies, which businesses themselves were engaged in interstate commerce or in the production of goods for interstate commerce, were employed in interstate commerce or in occupations closely related and directly essential to the production of goods for interstate commerce subject to the Act; and employees engaged in installing flooring and ceiling tile and other materials in new buildings or facilities on air bases or fields to be used by the United States Air Force for interstate flights and communications were engaged in interstate commerce and subject to the provisions of the Act, since the air bases are instrumentalities of commerce and the buildings and facilities in which defendants' employees made installations were being used or intended to be used at the time of such construction and installation work as an integral and component part of the Air Defense Command of the United States and as a supplement to and an expansion of the existing national and continental air defense system.

IV. Defendants have the burden of proving that their employees are exempt from the overtime provisions of the Act under the retail exemption provided in Section 13(a) (2) of the Act.

V. Under the law, Dakota Flooring Company's store and warehouse at Mandan and its store and warehouse at Bismarck, which are physically separated from each other must be considered and treated as separate establishments for the purpose of applying the retail exemption contained in Section 13(a) (2) of the Act.

VI. The defendants have failed to prove that their stores are plainly and unmistakably within the Section 13(a) (2) retail exemption in that the evidence does not meet the tests prescribed that seventy-five per cent of the annual dollar volume of sales of goods or services is not for resale and is recognized as a retail sale or service in the industry. The Court concludes that the sale and installation of floor and acoustical tile and

other materials to businesses and commercial companies, the United States Air Force and other federal, state and municipal agencies, schools, hospitals and churches, which sales of materials and services exceed twenty-five per cent of defendants' total business, are not retail sales.

VII. Furthermore, the testimony and evidence shows that Dakota Flooring Company contracts to perform work as a subcontractor of general building contractors and other contractors or contracts on its own and that its installation employees work along with other construction employees on construction projects, buildings and facilities being constructed, repaired or remodeled, in many instances pursuant to written specifications, contracts obtained by competitive bidding, and under other circumstances and situations common to companies engaged in the building contracting industry and as a part of the construction business, which work and sale of services and materials is outside the scope of the retail establishment concept contained in Section 13(a) (2) of the Act as amended in 1949.

VIII. Defendants' bookkeeper who makes and keeps the necessary records of materials ordered and purchased and of sales, and performed other miscellaneous office duties pertaining to defendants' over-all business operation, is engaged in interstate commerce and in the production of goods for interstate commerce and is subject to the Act.

IX. Defendants, employers within the meaning of the Act, have violated the provisions of the Act in employing employees in interstate commerce or in the production of goods for interstate commerce or in activities closely related and directly essential to such production and have (a) during many workweeks throughout the period involved in this action violated the provisions of Sections 7 and 15(a) (2) of the Act by employing their employees for more than forty hours a week without compensating them for such excess hours at a rate not less than one and one-half times their respec-

tive regular rates of pay, and, (b) have violated the provisions of Section 15(a) (5) of the Act in that the records maintained by them failed to show the total hours worked each workweek for many of their employees and the regular rates of pay, overtime pay and the basis upon which payment of wages are paid as required by the Record-Keeping Regulations issued by the Administrator and published in 29 C.F.R. 516.

### ORDER

Sufficient cause therefore appearing, it is ordered that a permanent injunction should issue granting the relief sought in plaintiff's complaint.