Arthur J. **GOLDBERG**, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

H. D. **McDANIEL** and D. H. "Dee" McDaniel, Individually and as Co-partners Doing Business as McDaniel Brothers Construction Company, Defendant.

No. J 60 C 49.

United States District Court
E. D. Arkansas,
Jonesboro Division.

Sept. 20, 1962.

Charles Donahue, Sol., Washington, D. C., Earl Street, Regional Atty., T. Hagan Allin, Trial Attorney, Dallas, Tex., for plaintiff.

McDaniel & Mooney, Jonesboro, Ark., for defendant.

YOUNG, District Judge.

This is an action brought by the Secretary of Labor under Section 17 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 217; the plaintiff seeks to enjoin the defendants from a continuation of defendants' alleged violations of the Act's overtime provisions.

The defendants are engaged in the general construction business, which includes the construction of factories and other manufacturing facilities. The defendants recently built a factory for the Jonesboro Industrial Development Corporation on property owned or formerly owned by the City of Jonesboro, Arkansas. During this job some of the defendants' employees worked more than a 40 hour workweek without the overtime compensation required by the Fair Labor Standards Act.

On the 28th day of January, 1960, Crane Company, which is engaged in interstate commerce, entered into a "Facilities Construction Contract" with the City of Jonesboro, Arkansas, a municipal corporation, the Jonesboro Industrial Development Corporation, and the City Water & Light Plant. This contract states in part that Crane Company desires to undertake a manufacturing operation in Jonesboro and will lease from the City a manufacturing building in accordance with plans and specifications prepared by Crane. The City of Jonesboro was to be responsible for the construction of this building.

Pursuant to a delegation of authority from the City of Jonesboro, the Jonesboro Industrial Development Corporation, an alter ego of that city, entered into a contract with the defendants to build a plant that was to be occupied by Crane Company.

As we have said above, there is no doubt that Crane Company is engaged in interstate commerce; their products are distributed nationally and internationally to independent wholesalers.

Prior to moving to Jonesboro, Crane Company was manufacturing plumbing brass in its Chicago, Illinois plant, and being supplied by Repcal Brass Manufacturing Company, a wholly-owned subsidiary of Crane located in Los Angeles, California.[1] The Jonesboro plant will eventually manufacture and distribute all the products that were being produced by Crane's Chicago plant and by Repcal's Los Angeles plant. Key personnel of both Crane and Repcal Brass have been trans-

1. Although Repcal is a wholly-owned subsidiary of Crane, they compete with the mother company in the sale of plumbing brass.

ferred to Jonesboro from Chicago and Los Angeles, and a considerable quantity of equipment in operation at the Los Angeles and Chicago plants has been and will be transferred to and utilized in the Jonesboro plant.

The plans and specifications for the construction of the Jonesboro plant were originally prepared by Crane Company engineers, draftsmen, and architects and designed to meet the Crane Company requirements for production purposes. The construction of the foundry and plating areas of the plant include specially constructed pits and other features, specially designed to meet Crane Company's specifications essential to the manufacturing and processing of the particular products produced for Crane. The defendants and Crane Company officials discussed the construction freely as is evidenced by testimony and correspondence introduced by the plaintiff. Although the defendants were building the plant for the City, they were at all times aware that the City had contracted to lease it to Crane upon completion for that company's manufacturing operations.

This factual situation again forces us to face the problem of determining whether certain construction workers are engaged in interstate commerce and thus covered under 29 U.S.C.A. § 207, as amended. It must be understood at the outset that commerce concerns more than actual interstate movements, but one must also keep in mind that the coverage under Section 207 does not extend to all interstate commerce which could constitutionally be reached. Kirshbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942). Coverage under the Act is not carried to its broadest constitutional extreme but is limited by Section 3(b) of the Act to "trade, commerce, transportation, transmission, or communication among the several States * * *." Mitchell v. H. B. Zachry Co., 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753 (1960). The judiciary must be careful "not to absorb by adjudication essentially local activities that Congress did not see fit to take over by legislation." 10 East 40th St. Co. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806 (1945). It becomes obvious then that the attitude of Congress is helpful if not necessary in determining coverage. Mitchell v. H. B. Zachry Co., supra, concluded that the last clause of Section 3(j) of the Act as amended in 1949 intended to constrict the coverage of the Act.[2] It is, therefore, the duty of this court to decide whether the activity involved here is so affected by local interest as to be removed from the coverage, or is so closely related to interstate commerce to be covered under the Act. Justice Frankfurter in Zachry, sets out the three ways which an employee may be engaged in interstate commerce sufficient to satisfy the Act. They are: (1) Employment "in" trade commerce, transportation, transmission, or communication among the several states; (2) Employment "in" production of goods which are "for" commerce, etc.; (3) Employment in an activity which is only related to such production. Local interests are least affected by number one, and it is covered by the Fair Labor Standards Act. Number two is a step removed but may still be covered by the F.L.S.A. See Alstate Construction Co. v. Durkin, 345 U.S. 13. 73 S.Ct. 565, 97 L.Ed. 745 (1953). Number three is the furthest removed; it is at the periphery of coverage, and although some activities in this category may be covered, it is the opinion of the writer that the Supreme Court in Zachry severely limits coverage in this area.

2. Before the Act was amended Section 3(j) provided that "an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, *or in any process or occupation necessary* to provide the production thereof, in *any State.*" 52 Stat. 1061 (Emphasis added). The last clause of Section 3(j) as amended provides: *"or in any closely related process or occupation directly essential to the production thereof* * * *." 63 Stat. 911 (Emphasis added).

Justice Frankfurter says in Zachry at page 316 of 362 U.S. at page of 744, 80 S.Ct.:

> "Furthest removed from 'commerce' is employment not 'in' production 'for' commerce but in an activity which is only 'related' to such production. In applying this provision, we have necessarily borne in mind that it is furthest removed in the scheme of the statute from the hub of the national interest in 'commerce' upon which a limited displacement of state power is predicated."

Mitchell v. Zachry also tells us that the amendment of Section 3(j) reinforced the requirement that in applying the last clause of the section, which is represented by number three above, "its position at the periphery of coverage be taken into account as a relevant factor in determination." The last clause of Section 3 (j) marks the outer limits of coverage.

The issue before us can be condensed in one simple question: Is the construction of a building which is to be used for the manufacture of goods which are destined to be placed in interstate commerce covered under 29 U.S.C.A. § 207 as amended?

 It is clear that the mere fact that this is new construction or replacement construction will not preclude coverage. Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196 (1955); Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959); Mitchell v. Zachry, supra. The test is "whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity." Mitchell v. C. W. Vollmer & Co., supra. The Supreme Court of the United States in Zachry while deciding that employees engaged in building a dam to create an expended reservoir which would supply water to industries engaged in interstate commerce,[3] were not covered said: "As we held in Vollmer, that an activity is rightly called construction and is therefore distinct from operation, does not *per se* remove it from coverage. Construction may be sufficiently 'closely related' to production to place it in that proximity to 'commerce' which the Act demands as a predicate to coverage. Here, however, neither a facility of 'commerce' nor a facility of 'production' is under construction." The Supreme Court did not tell us what activities were "sufficiently closely related," nor does it define a "facility of commerce" or a "facility of production." It appears to me that the answer to these labyrinthine problems lies in a study of the pertinent decisions.

The test laid down in Vollmer has already been discussed. A very important decision which the Government relies upon is the Lublin case;[4] the Court had to decide whether employees of an architectural and consulting engineering firm, which designed, inter alia, interstate facilities and instrumentalities "including air bases, roads, turnpikes, bus terminals, and radio and television installations" were covered. It is of interest to note, however, that the Court was not confronted by the new construction problem because the defendant company had engaged in many projects involving "repair, extension, or relocation of existing [interstate] facilities." (358 U.S. at p. 213, 79 S.Ct. at p. 265). The dictum in Lublin, however, would tend to limit coverage in construction work to activities which are related "to interstate instrumentalities or facilities, such as bridges, canals and roads * * *." (358 U.S. at p. 212, 79 S.Ct. at p. 264).

The Government cites many cases to uphold its contention that the new con-

---

3. From 40 to 50% of the water consumed by the system is used by industry; most of these industries produced goods for interstate commerce, and the water is essential to such production.

4. Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 79 S.Ct. 260, 3 L. Ed.2d 243 (1959).

struction of a building which will house a manufacturing company engaged in interstate commerce is covered under the Act. Walling v. McGrady Construction Co., 3 Cir., 156 F.2d 932 (1946), cert. den. 329 U.S. 785, 67 S.Ct. 298, 91 L.Ed. 673 (1946) dealt with (1) the repairs, extensions, or relocations of existing industrial facilities; (2) repairs, construction, and reconstruction on interstate facilities (railroad, telephone, and relocations of a road and bridges). Mitchell v. Brown Engineering Company, 8 Cir., 224 F.2d 359 (1955), cert. den. 350 U.S. 875, 76 S.Ct. 119, 100 L.Ed. 773 (1955), expressly avowed that it was not concerned with new construction; this case dealt with the repair of interstate facilities. Mitchell v. Hodges Contracting Company, 5 Cir., 238 F.2d 380 (1956), concerned the construction of a television and radio station; these are surely interstate facilities and certainly not analogous to a building which will house a manufacturing company. Archer v. Brown & Root, Inc., 5 Cir., 241 F.2d 663 (1957), cert. den. 355 U.S. 825, 78 S.Ct. 33, 2 L.Ed.2d 39 (1957), although holding that the employees engaged in the construction of a plant to be used for prefabricating brick slabs and materials needed in construction of a new causeway across Lake Pontchartrain were covered under the Act refused to declare all new construction covered, and held that the employees building the plant were covered because the court had already found that employees building the causeway were covered, and the former employees "were, in effect, also building the Bridge." The bridge was an interstate facility, and it cannot be compared with the construction in the case at bar. Southern Pacific v. Gileo, 351 U.S. 493, 76 S.Ct. 952, 100 L.Ed. 1357 (1956), involves not only another Act (F.E.L.A.), but the employees were working for an interstate railroad. Mitchell v. Sampson Construction Company, 37 Lab.Cas. § 65,577 (D.C.Kan., 1959), is a case which involves the construction of grain elevators that stored grain which would be shipped into interstate commerce. In that case the district

court found that the elevators were so directly and vitally related to the railroad that they became "a part of the railroad upon which they are located and the interstate network of railroads." The court then went on to say: "The elevators are thereby both additions to and improvements of this existing facility of interstate commerce." It is true that the court also held that the construction of the elevators is "a process or occupation closely related and directly essential to the production of goods (grain) for interstate commerce, within the meaning of Section 3(j) of the Act." I feel that this case is distinguishable since it was said that *both* a facility "of" commerce and a facility of production "for" commerce were involved; it cannot be said that the former is involved in the case now before the court. However, if the cases are not distinguishable it is my opinion that we must be guided by our interpretation of Zachry and decline to follow the Kansas District Court's decision. As for Miller v. South River Mining Co., 37 Lab.Cas. § 65,672 (W.D.Vir. 1959), it was decided before Zachry. Plaintiff also cites Goldberg v. Dakota Flooring Company, 201 F.Supp. 161 (D. N.D.1961). Although it would seem from some of the language in Judge Register's conclusions of law that this case is directly in point, close examination of the facts discloses that this case is distinguishable on the facts. Judge Register carefully points out that none of the construction, except that done for the armed services, was more than a mile from an existing facility of commerce or of production for commerce. For these reasons we do not feel that the Dakota Flooring Co. case is controlling.

It defies reason to say that the construction of a building which will probably be used by a manufacturer in interstate commerce is "in" interstate commerce; certainly the building is not a facility of interstate commerce. Before the building can have anything at all to do with interstate commerce it must be filled with people and machines producing a product for shipment to surrounding

sister states. The construction of a building surely cannot support employment "in" production of goods which are "for" commerce. For an example see Alstate Construction Co. v. Durkin, supra. This leaves only one category: employment in an activity which is only related to such production. I do not feel that employees who are constructing a manufacturing building are closely enough related to production to place it "in that proximity to 'commerce' which the Act demands as a predicate to coverage." The Government has cited no United States Supreme Court or any Court of Appeals case which would provide coverage under the F.L.S.A. for a contractor's employees who are building a new plant which will be used by a producer engaged in interstate commerce. In fact, many of the cases cited by the Government to uphold its theories tend to cast doubt on any real extension of the so-called new construction doctrine. See especially footnote No. 2 in Mitchell v. Vollmer, supra; Lublin, supra; Archer v. Brown & Root, Inc., supra, 241 F.2d at pp. 667–668. It is the opinion of this court that the new construction doctrine announced in the Vollmer case has been limited to repairs and extensions of *existing* industrial facilities, and the repairs, constructions, and reconstructions of interstate facilities.

Plaintiff next contends, however, that this is a replacement of an existing interstate facility. See Chambers Construction Co. v. Mitchell, 233 F.2d 717 (8th Cir. 1956). This argument has no merit. "The distinction between *maintenance and repair* on the one hand, and *replacement or new construction* on the other, may often be difficult to delineate but is a practical distinction to which law must not be indifferent." Mitchell v. H. B. Zachry Co., supra. (emphasis supplied). The Supreme Court felt that this was

true because the remoteness from the production of goods for commerce or for "commerce" itself is the same in new construction or replacement in that both occur before operation can begin. See also Mitchell v. Tune, 178 F.Supp. 138 (W.D.Ark.1959); Mitchell v. Hodges Contracting Co., 136 F.Supp. 854 (M.D. Ga.1955).[5]

 It is the holding of this court that the construction of the building in question was not covered by the Fair Labor Standards Act, as amended, and the Government's request for an injunction will be denied and the complaint dismissed.

---

5. The Government cites Mitchell v. Hodges Contracting Co. for the proposition that the construction of a new sawmill for thread mill was covered since although the building was new the facility was not. However, in that same case

the district court held that the construction of a new building for a manufacturing company in a town where this company had never been located was a new construction and not an enlargement of an existing facility of commerce.